## AMERICAN BRAKE SHOE & FOUNDRY CO. v. NEW YORK RYS. CO. In re EIGHTH AVE. R. CO. In re NINTH AVE. R. CO.

(Circuit Court of Appeals, Second Circuit. June 21, 1922.)

### Nos. 246, 247.

1. **Appeal and error ⬳21—Jurisdiction of appeal cannot be conferred by consent.**

   Counsel cannot by consent confer jurisdiction on the Circuit Court of Appeals of an appeal from an interlocutory order.

2. **Appeal and error ⬳68—"Final appealable order" defined.**

   An adjudication is a "final appealable order," if it involves a determination of a substantial right against a party in such a manner as leaves him no adequate relief, except by appeal.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Order.]

3. **Appeal and error ⬳71(4)—Order deferring consideration of claim until final accounting in receivership suit held appealable.**

   If lessors of street railway lines had a right of immediate payment by the lessee's receiver of sums due them under the leases, orders deferring consideration of their claims until the final accounting of the receivership amounted to a determination and denial of a substantial right, leaving them no adequate relief, except by appeal, and hence were appealable.

4. **Street railroads ⬳58—Receiver not assignee of leaseholds.**

   A chancery receiver appointed for a street railway company under a creditors' bill took no title to the company's property, and was in no sense an assignee of leaseholds of the insolvent's estate.

5. **Receivers ⬳90—Duty to accept assets of value and reject assets of no value.**

   It is a receiver's duty to accept as part of the estate to be administered those assets which will prove of value to the estate, but those which are not of value are to be left outside the field of his receivership.

6. **Receivers ⬳91—Entitled to take possession of leased premises and operate for reasonable time.**

   A receiver is entitled to a reasonable time to determine whether he will accept assets of problematical value, such as a lease, as part of the estate, and is entitled to take possession of leased property and operate it for a reasonable time for this purpose.

7. **Receivers ⬳91—Do not become bound by lease during reasonable time to determine condition of affairs.**

   A receiver, by the mere act of taking possession of leased premises, does not adopt the lease and become bound by its covenants, but is entitled to hold for a reasonable time, to ascertain the situation of affairs without being so bound.

8. **Railroads ⬳208—Duty of receiver to operate leased line.**

   When a court appoints a receiver of the property of a railroad company which embraces a leasehold estate, it is his duty to take possession of it and to continue to perform the public trust which is imposed on the property.

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**9. Railroads ⬤⟹208—Receiver entitled to reasonable time to adopt lease.**

A railroad receiver is not bound to continue to operate a leased road for the period of the lease, but is entitled to a reasonable time in which to determine whether the interests of the trust will be better subserved by making the lease his own or by returning the property to the lessor.

**10. Railroads ⬤⟹208—Receiver, adopting lease, becomes liable on covenant to pay rent.**

If a railroad receiver elects to adopt a lease, privity of estate is thereby created, and he becomes liable on the covenant to pay the stipulated rent.

**11. Railroads ⬤⟹208—Receiver, rejecting leased road after trial, only required to turn over net earnings.**

A railroad receiver, electing to reject a lease and return leased property to the lessor at the end of a reasonable trial period, is only required to turn over to the lessor the entire net earnings of the leased line during that period, and is not liable for the stipulated rent.

**12. Railroads ⬤⟹208—Lessor may ask court to direct receiver to return road.**

If lessor of railroad is not willing to have lessee's receiver operate it for less than the stipulated rent, it may at any time ask the court to direct the receiver to return the road to it.

**13. Railroads ⬤⟹208—Lessor, permitting lessee's receiver to operate leased road without adopting lease, entitled only to net earnings.**

So long as the lessor of a railroad permits the lessee's receiver, who has not adopted the lease, to operate the leased line, it acquiesces therein, and can demand no more than the entire net earnings.

**14. Railroads ⬤⟹208—Possession by lessee's receiver does not prove that lease has been taken over.**

The fact that a leased line is being operated by lessee's receiver does not itself prove that the lease has been in fact taken over by the receiver.

**15. Street railroads ⬤⟹58—Delay in returning roads to lessors, on demand on lessee's receiver, held not unreasonable.**

Where lessors of street railroad lines, who on April 3d made demand on the lessee's receiver, appointed March 20th, for return to them of the leased lines for alleged default in the payment of rent, etc., had no cars, power, or other facilities for operating the lines as independent systems, and the demand for return involved many difficult legal and practical problems, because of franchise provisions and trackage arrangements or agreements, a delay until August 1st in case of one line, and October 1st in the case of another, in ordering such return, did not exceed the reasonable time needed to make the transfer without prejudice to the public interests, as well as those of the lessors.

**16. Street railroads ⬤⟹58—Receiver not liable for more than net earnings during delay in returning leased lines to lessors.**

Where lessors of street railroad lines demanded their return by lessee's receiver for default in payment of rent, etc., before receiver had reasonable time to elect whether or not to adopt leases, and immediate compliance was impossible because of franchise provisions, trackage arrangements and lessors' lack of facilities for operating the lines, and continued operation by the receiver was necessary to protect the public interests and preserve the lessors' rights such demand did not make the receiver liable for the stipulated rent rather than the net earnings of the leased lines.

**17. Street railroads ⬤⟹58—Lessee liable on covenants of lease, notwithstanding receivership.**

Lessee of street railway lines remains liable to the fullest extent on the covenants in the leases, notwithstanding its receivership.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**18. Street railroads ⟨⟩⟩58—Consideration of claims of lessors of lines operated by receivers properly deferred until final accounting.**

Where a street railway receiver, continuing to operate leased lines for some time, was liable to the lessors only for the net earnings, and not for the stipulated rent, the court did not err in deferring consideration of the lessors' claims until the final receivership accounting.

Appeals from the District Court of the United States for the Southern District of New York.

Receivership suit by the American Brake Shoe & Foundry Company against the New York Railways Company, in which Job E. Hedges was appointed receiver of the defendant company. From orders denying the applications of the Eighth Avenue Railroad Company and the Ninth Avenue Railroad Company for immediate payment of sums due them under leases (282 Fed. 293), they appeal. Affirmed.

In 1912 the New York Railways Company was organized as a reorganization of the Metropolitan Street Railway Company, and took over all the street railways then owned or leased by the said Metropolitan Street Railway Company. In March, 1919, it was operating about half of the surface railroads in New York City, as owner of a number and as lessee of several other street railway companies. Among the lines which it then operated as lessee were the railroads and other property of the Eighth Avenue Railroad Company and of the Ninth Avenue Railroad Company. The lease of the Eighth Avenue Railroad Company was made in November, 1895, for a period of 99 years, and the lease of the Ninth Avenue Railroad Company was made in March, 1892, for a period of 99 years. In each lease the rent was payable quarterly at the end of each quarter, with provision that, if the lessee were in default for 90 days, the lessor at its option could declare lease void and re-enter. Each lease also provided that the lessee pay and discharge all taxes and assessments of every kind. In each case the lessee omitted to pay the rents payable January 1, 1919, and also the taxes due November, 1918, and the 90 days default clause expired on April 1, 1919. At the time the Eighth and Ninth Avenue Railway Companies leased their lines the companies were operating horse car lines. Afterwards the Metropolitan Company electrified and re-equipped both the Eighth and Ninth Avenue lines.

On March 20, 1919, the American Brake Shoe & Foundry Company, a general creditor of the New York Railways Company, having filed a bill of complaint against the latter on its own behalf and on behalf of all other creditors who might thereafter join in the prosecution of the suit, asked for the appointment of a receiver of all the property and assets of the defendant. On the same day the New York Railways Company filed an answer, in which it admitted all the various allegations of the complaint and joined in the prayer of the complaint that the court would take possession of its railroad system through the appointment of a receiver. On the same day, March 20, 1919, Job E. Hedges was appointed by Judge Mayer as temporary receiver, and on March 31, 1919, an order was entered which continued Mr. Hedges as receiver during the pendency of the suit.

On March 26, 1919, the Eighth Avenue Company and the Ninth Avenue Company notified the receiver of the rent and taxes in arrear and demanded payment. On April 3, 1919, each of these companies served upon the New York Railways Company and upon the receiver a demand of possession of all their respective railroad properties, alleging a breach of the respective leases and a default, which had continued for more than 90 days, in accordance with the terms of the leases, which provided that, if a default continued for a period of 90 days, the lessors should have a right of re-entry. The demand of possession stated that the lessors "will arrange with you to take such possession at such time and in such manner as will least interfere with the public service." The demand not being complied with, each appellant procured an order directing the receiver and other parties to show cause why the relief

prayed for in the petition should not be granted. On return of that order the receiver claimed not to have had possession and operation of the property a sufficient length of time to determine whether he would elect to adopt the lease, and at that hearing attorneys appeared, representing bondholders' committees of the mortgages made by New York Railways Company, as well as the city of New York and the Public Service Commission. Counsel for the bondholders' committees joined in the request of the receiver that he have further time to determine what to do. The court denied application of each appellant without prejudice, with leave to renew, and an order dated April 30, 1919, was entered to that effect.

Later each appellant renewed its application, and asked that the receiver be directed immediately to pay and discharge the taxes and rents due, and that it be determined that the appellants had the right to re-enter and repossess all their street surface railroad and other properties, including substituted property, and that the receiver be directed to discontinue his use of the appellants' railroads and other property. The matter was heard on June 25, 1919, and the bondholders took the position that the leased lines belonging to appellants "be let go," and the court granted the applications for their return, and asked that appellants' counsel submit a plan of operation satisfactory to the court. It resulted in an order, dated July 15, 1919, directing the receiver not to adopt the lease of the Eighth Avenue Company. but to return its railroad and certain other property to it at midnight between July 31 and August 1, 1919, or earlier at the receiver's option, on three days' notice, and reserving certain questions for future determination. At the time stated the Eighth Avenue Company took possession of said property, and has since operated its railroad. And by an order dated on September 26, 1919, the court directed the receiver not to adopt the lease of the Ninth Avenue Company, and to return to that company its railroad and other property at midnight between September 30 and October 1, 1919. At the time stated the Ninth Avenue Company took possession of said property, and has since operated its railroad.

On November 29, 1919, each appellant applied to the District Court for a determination of the questions and issues not theretofore disposed of, and for a direction that the receiver immediately pay amount due petitioner for the use of its property during his possession of and operation of the property described in the lease, and that the receiver also be directed to return and deliver to petitioner all of its railroad and other properties as in the petition more fully described. The receiver, in his answer to each petition, admitted the default of the New York Railways Company, and alleged that the petitioner was not in a position to operate its said railroad, as it had no cars nor power, nor barns to house the cars, nor tools, implements, etc., nor the right to operate on both tracks south of Chambers street, nor motormen or conductors, and when the railroad was returned petitioner was enabled to operate only because the court directed the receiver to supply the power, cars, and other things, and he alleged that the several demands made upon him for immediate return of the property were not made in good faith, and at the time made that he had not had a reasonable time to determine whether "it was in the interests of the estate committed to his care whether or not to adopt the lease" of the petitioner.

By order of court dated January 14, 1920, the issues were separated, and present proceedings involved only the application of appellant for the payment by the receiver of all sums due by reason of his possession and operation of the property as such receiver. The claim of the appellants is for payment by receiver to it of all sums due as rental and for taxes or otherwise, in the amount and to the same extent as though the leases had been adopted by the receiver. The amount claimed on behalf of the Eighth Avenue Company was $127,485.30, and on behalf of the Ninth Avenue Company $47,974.20, with interest from dates named. The other matters referred to in petition of November 29, 1919, are now being litigated in another proceeding in the District Court.

After the appointment of the receiver in the creditors' suit brought by the plaintiff, the American Brake Shoe & Foundry Company, it appears that the Guaranty Trust Company, trustee of the 4 per cent. refunding mortgage, and the Farmers' Loan & Trust Company, trustee of the 5 per cent. adjustment

mortgage of the New York Railways Company, had filed, respectively, their bills of foreclosure, the receivership had been extended to these foreclosure actions, and each of these trustees claimed that the cars and other equipment which the receiver had temporarily delivered to the Eighth Avenue Railroad Company and the Ninth Avenue Railroad Company were subject to the lien of their mortgages and should be sold under the decrees to be entered in their foreclosure actions. The court accordingly ordered the issue as to the title to the cars and the issue as to the liability of the receiver for rent to be severed. It directed the issue of title to the cars and equipment to be raised by a bill, but it undertook to dispose of the claim against the receiver for rent.

Thereafter the court denied the claim of the lessor companies to immediate payment of the rental and taxes during the receiver's operation of the property. On August 17, 1920, orders were entered denying the petitions of the Eighth Avenue Company and of the Ninth Avenue Company in so far as they asked that the receiver be ordered and directed immediately to pay all sums due the petitioners held by said receiver under the leases to the Metropolitan Company during his possession and operation of the property of the petitioners, and consideration of the claims of the petitioners was deferred until the final accounting be had in the cause. From these orders of August 17th the appeals were taken.

Michel Kirtland, of New York City (Morgan J. O'Brien, of New York City, of counsel), for appellants.

Winthrop & Stimson, of New York City (Bronson Winthrop and G. Herbert Semler, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). It thus appears that the Eighth Avenue and Ninth Avenue Railroad Companies in the city of New York leased their lines of street railroad to the Metropolitan Street Railway, which thus came into the hands of the New York Railways Company as its successor. The terms of the leases not having been complied with a demand was made upon the receiver of the Metropolitan Company for a return of their lines of road. That demand has been complied with, under the orders of the District Court. But that court denies the claim which the lessors have made to an immediate payment of the rental and taxes during the time of the receiver's operation of the lines, and that question has been brought here for this court's determination.

[1-3] The appellants contend that the court erred in denying their petition for immediate payment, and in deferring consideration of their claim until there has been a final accounting, which they say may not occur until some time in the dim and distant future. The appellee does not raise the question whether the orders appealed from can be regarded as final orders. Of course, if they are not final, the appeals do not lie. And the receiver states that he does not raise the question as to the finality of the orders, but joins the appellants in asking us to pass upon the question which the court below decided. But counsel cannot by consent confer jurisdiction upon us which the laws of the United States withhold, and appeals do not lie from interlocutory orders. An adjudication is a final appealable order, if it involves a determination of a substantial right against a party in such a manner as leaves him no adequate relief, except by recourse to an appeal. Odell v. H. Batterman, 223 Fed. 292, 295, 138 C. C. A. 534. If the petitioners have a

right of immediate payment, the orders must be regarded as a determination and denial of a substantial right, and which leave no adequate relief, except by recourse to an appeal. As such we have a right to review them.

[4] We shall therefore proceed to inquire whether the lessor companies can be considered as entitled to the rent stipulated in the leases during the period within which the receiver operated the lines. The receiver, it is to be noted, was appointed under a creditors' bill, and was a mere chancery receiver or arm of the court, extended about the assets of an insolvent corporation for their preservation, and for their ultimate sale and distribution among the insolvent company's creditors. Such a receiver takes no title to the property, and is not in any sense an assignee of the leaseholds of the insolvent's estate.

[5-7] It is the receiver's duty to accept as part of the estate to be administered for the creditors those assets which will prove of value to the estate. Those which are not of value are to be left outside the field of his receivership. As to those assets which are of problematical value, it is necessary that the receiver should be allowed a reasonable time within which to determine to which class of assets they belong, whether they are of the class which he should administer, or to the class which he is to let alone. In order that he may determine, for example, whether he should assume a lease belonging to the insolvent estate, he is entitled to take possession of the leased property and operate it for a reasonable time. By the mere act of taking possession he does not adopt the lease and become bound by its covenants. He is entitled to hold for a reasonable time, to ascertain the situation of affairs, and while so holding he is not bound by the covenants of the lease. Quincy, Missouri & Pacific Railroad Co. v. Humphreys, 145 U. S. 82, 101, 12 Sup. Ct. 787, 36 L. Ed. 632.

What has been thus far said is applicable to all corporations alike, whether they are quasi public or private. But in the case of quasi public corporations, such as railways, certain considerations apply which are inapplicable to merely private corporations. The property of a quasi public corporation is impressed with a public trust, and the rights and remedies of all persons interested in the property are to some extent changed by the necessities of the case.

[8] When a court appoints a receiver of the property of a railroad company which embraces a leasehold estate, it is his duty to take possession of it and to continue to perform the public trust which is imposed upon the property. The public duties which the railroad owes must continue to be performed without interruption. The railroad must be kept going. In a private corporation the court deals with the assets guided by the ultimate expected gain or loss to the estate which it administers. In a quasi public corporation, the court's paramount concern is not the gain or loss to the estate, but the performance of the public duty imposed on the corporation. The immediate duty of the receiver upon his appointment is to continue the operation of the leased line because the public necessity requires it. The reason for this is well set forth in Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 729, 117 C. C. A. 503, 511, where it is said:

"This rule grows out of the necessities of the case, and is not inequitable toward the lessor. The contract of lease is not necessarily affected by the appointment of the receiver. The right of the lessor to enter for condition broken is not impaired. It may stand upon its legal rights; but ordinarily it is not in a position to stand upon them. A lessor railroad company is seldom so situated that it can take back its property immediately upon the appointment of a receiver for its lessee. It may have no working organization. Its rolling stock may have become worn out. It may have insufficient immediate funds. Its public duties, however, must be performed without interruption. It is a quasi public corporation, and must keep its railroad going. Its franchises must be preserved. Its obligations as a common carrier must be fulfilled; and these obligations can seldom be fulfilled, except by the temporary operation of the leased road by the receiver of the lessee. A court of equity, in provisionally operating a leased line, confers a benefit upon the lessor company, as well as upon the lessee, which renders it highly equitable that the receiver by such operation should not be held to adopt the lease, but should have a breathing spell within which to determine whether to accept or reject it."

[9-14] The rule, however, is well settled that the receiver is not bound to continue to operate the leased road for the period of the lease, but he is entitled to a reasonable time in which to decide whether the interests of his trust will be better subserved by making the lease his own or by returning the property to the lessor. If he elects to adopt the lease, a privity of estate is thereby created between himself and the lessor, and he becomes liable upon the covenant to pay the stipulated rent. United States Trust Co. v. Wabash R. Co., 150 U. S. 299, 14 Sup. Ct. 86, 37 L. Ed. 1085. If he elects to reject the lease and return the property to the lessor at the end of the trial period, he is only required to turn over to the lessor the entire net earnings of the leased line during the period of his provisional operation. United States Trust Co. v. Wabash R. Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085; Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 730, 117 C. C. A. 503. And if the lessor company is not willing to have the receiver operate its leased line for less than the stipulated rent, it may at any time ask the court to direct the receiver to return the road to it. Termination of Lease Proceeding, 198 Fed. 725, 117 C. C. A. 503; Pennsylvania Steel Co. v. New York City Railway Co., 216 Fed. 463, 132 C. C. A. 518. But so long as the lessor company permits a receiver who has not adopted the lease to continue to operate the leased line, it acquiesces therein, and can demand no more than what the property earns, the entire net earnings of its line. Pennsylvania Steel Co. v. New York City Railway Co., 225 Fed. 734, 736, 141 C. C. A. 6. And the fact that the property of the leased line is being operated by the receiver does not in itself prove that the lease has been in fact taken over by the receiver. He does not, by merely taking possession, become the assignee of the lease. Quincy, Missouri & Pacific Railroad Co. v. Humphreys, 145 U. S. 82, 98, 12 Sup. Ct. 787, 36 L. Ed. 632.

It appears that, a few days after the appointment of the receiver, each of the lessor companies made a demand upon him for the possession of the leased properties, claiming a forfeiture of the leases on the ground that the New York Railways Company was in default. Such a demand was made on April 3, 1919, and on April 11, 1919, each of the lessor companies petitioned the court for a return of their properties. On April 21st the court denied their petitions, with leave to renew the

application on 10 days' notice. The court stated that in the short time which had elapsed since the appointment of the receiver it was not prepared to cause the public the inconvenience which would be entailed by a return of the leased property of the lessor companies. It is entirely clear to us that at the time these demands were made the lessor companies were not so situated as to be able to operate their lines independently, had the court directed the receiver to return them. At the time the leases were made both the Eighth and Ninth Avenue lines were horse car lines. Thereafter the old horse car equipment was scrapped on both lines, and electric equipment was provided, and several millions of dollars had been expended on the electrification of the lines. The amount expended on the electrification of the Eighth Avenue line alone is stated as over $3,000,000. The Metropolitan Street Railway Company had absorbed a large number of street railroads in the city of New York, both owned and leased. It has constructed out of these a unified street railway system, and in doing so had disregarded the franchise lines of the constituent companies and had combined them as the public convenience required. No cars were allocated to any given leased lines, and all cars ran over the different routes of the system, without regard to the different franchises as might be convenient.

Moreover, the Metropolitan Street Railway Company mortgaged all its new equipment then owned or thereafter acquired, and the New York Railways Company succeeded to the rights of the mortgagees, and then in turn mortgaged the property under its mortgages. All this embarrassed and complicated the problem of turning back the leased lines, which at the time of the demand made for their return were not susceptible of independent operation. Neither of the lessor companies, if the lines were returned, was prepared to operate them and to discharge the duties which under their franchises were due from them to the public. Indeed, the admissions of their counsel in the court below show conclusively that these companies could not operate their lines at the time of the demand, but thought an agreement might be reached with the receiver to give them the assistance which would be necessary to enable them to be operated.

The receiver in his answer to the petitions of the appellants alleged that:

(1) The lessor companies were without cars to operate their lines, and were not in a position to obtain them.

(2) The lessor companies were not entitled to receive the necessary cars from the New York Railways Company under the provisions of their leases.

(3) The lessor companies had no power wherewith to operate the lines, and, even if they had been in a position to buy power from other companies, it would take considerable time to connect their lines with the source of power.

(4) The companies, even if they had been able to obtain cars, had no housing facilities to house the cars necessary for the operation of their lines.

(5) The companies were without any tools, implements, repair services, motormen, or conductors to operate their lines.

(6) The Eighth Avenue Company lacked the necessary trackage facilities, without cross-overs, which would require many months to procure and to install in the streets, and that immediate track facilities for such operation could only be afforded over tracks owned or controlled by the New York Railways Company.

The demand for the return of the lines, it is evident, involved many difficult legal as well as practical problems, because, inter alia, of the provisions of the franchises and of trackage arrangements or agreements. It was important, too, that the return of the lines should be made without cessation of operation of the lines and with as little interference with the public service as practicable. Time was required for the perfection of some plan of operation, which necessarily involved much detail and much negotiation, and which had to be worked out in such a way that the operation of the various lines might not be interrupted.

As was said by Judge Lacombe in Pennsylvania Steel Co. v. New York City Ry. Co. (C. C.) 157 Fed. 440, 445:

"The controlling element in the operation of the property by the receivers will be the circumstances that such property is devoted to the public service. The traveling public are to be first considered; the service already performed by the roads must be kept up, and improved upon so far as may be."

To the same effect is the language of this court in Pennsylvania Steel Co. v. New York City Ry. Co., 225 Fed. 734, 735, 141 C. C. A. 6, 7, where Judge Ward, writing for the court, said:

"The paramount intention, however, to administer the property of these insolvent companies primarily for the benefit of the public, by maintaining the operation of the system and secondarily for preserving the interests of all concerned in accordance with their respective rights and priorities, is unmistakable."

It appears, therefore, that if there had been an immediate compliance with the demand for the return of the properties at the time the demand was made, the appellants could not have operated them, and their own rights in their franchises would have been imperiled, and at the same time the interests of the traveling public, which are "to be first considered," would have been sacrificed. Moreover, immediate compliance would have deprived the receiver of his right to "a reasonable time" within which to determine whether to adopt the leases, as the demand was made within 13 days of the receiver's appointment.

The claim which the appellants make is that, as they made on April 3, 1919, a demand upon the receiver for a return of their respective lines, they are entitled to receive the rent stipulated in the respective leases from the date of the demands until the properties were actually surrendered into their possession, which in the case of the Eighth Avenue Company's line was August 1, 1919, and in that of the Ninth Avenue Company's line was October 1, 1919. In addition they demand the unpaid taxes. They grounded their demand for the return of the properties, as has been said, upon the default of the New York Railways company in the payment of taxes and rentals due on and prior to January 1, 1919; and they assert that after the default had continued for a period of 90 days they possessed under the terms of their respective

leases a right of entry upon the demised property. Their theory is that at all times after the default and the expiration of the 90-day period, and after the demand made upon the receiver, they were entitled as of right to the immediate possession of their respective properties, subject only to the right of the receiver to retain the property for a reasonable time to determine whether to affirm or disaffirm the leases, if meantime he complied with the terms and conditions thereof. We are accordingly asked to reverse the court below, and to direct that the receiver pay to the appellants for the use and occupation of their respective properties the same amount as though the leases had been adopted.

[15] Before disposing of the question thus raised, it should be said that in our opinion the delay which occurred between the date of the demand and the time the lines were actually returned to the appellants cannot be regarded as unreasonable under the circumstances already herein disclosed. It did not exceed "the reasonable time," needed to make a transfer possible without prejudice to the public interests, as well as to those of the lessor companies themselves.

[16] It is evident, from what has been said in another part of this opinion, that if no demand had been made, and the receiver had continued in possession the reasonable time to which he was entitled, to determine whether or not he would adopt the lease, he would have been liable simply for the net earnings. Does the fact that a demand was made by the appellants before the receiver had a reasonable time in which to make the election to which he was entitled, and where immediate compliance with the demand was impossible, because of circumstances for which the receiver was not in any way responsible, and where the continued operation of the lines by the receiver was necessary to preserve the rights of the lessors themselves, and to protect the interests of the public, convert the receiver's liability from one for net earnings only into one for the stipulated rent? It is the opinion of this court that it does not.

The appellants rely upon United States Trust Co. v. Wabash Western Railway Co., 150 U. S. 287, 14 Sup. Ct. 86, 37 L. Ed. 1085. In that case, however, the demand was made, not *before* the receiver had had a reasonable time in which to make his election, but *after* such a time had long since passed. In that case the receiver was appointed May 27, 1884, and stipulated rent was paid to October 1, 1884, when they ceased to pay the stipulated rentals. Application was made for the return of the lines on December 2, 1885. Hearing of the application was postponed one month, over the lessor's objection and upon the receiver's request. On January 6, 1886, the court ordered the surrender of the lines and allowed 30 days within which to negotiate the details. On February 6, 1886, the court granted the receiver an extra month of grace, provided the stipulated rent was paid for that period. In that case the receiver had the lines in his possession 6 months before the demand was made, and thereafter 15 months elapsed between the demand and the surrender. The question involved was not as to the payment of rent during the period within which the receiver was entitled to make his election, and it did not involve the period within which the demanding lessors were in no situation in which they could operate the lines. The sole question in that case related to the rentals from De-

cember 9, 1885, to February 6, 1886. The stipulated rent was allowed from December 7th to January 6th. It was denied for the month of January on the ground that the delay for that month had been acquiesced in and that the acquiescence worked an equitable estoppel.

The circumstances of that case and of the case at bar are so unlike that we are unable to find in it an authority in support of the appellant's claim. In the Wabash Case the receiver used his official position to keep out the lessor, when no equity sustained his course. In this case the receiver used his position, not to keep the lessors out, but to make it possible for them to operate the lines when the surrender took place. Whatever delay occurred was not in the interest of the receiver, who derived no profits from the operation of the leased lines. As the detention of these lines in the hands of the receiver was inevitable, necessary, and solely for the preservation of the rights of the lessors themselves, and of the public using the roads, we fail entirely to see how the receiver can equitably be called upon to pay over to the appellants more than the net earnings which the lines produced while they were being operated for the purposes above referred to. As the receiver derived no profit from their operation, and the facts show that, if the lines had been surrendered at the time of the demand, they could not then have been operated by the lessors at a profit, or operated at all, the appellants lost nothing by the delay.

In coming to the conclusion we have reached, we have not overlooked the case of Farmers' Loan & Trust Co. v. Northern Pacific R. Co., 58 Fed. 257, decided in the Circuit Court for the Eastern District of Wisconsin in 1893. In that case Judge Jenkins, delivering his opinion orally, said:

"If the lessor knock at the door of the court and demand back its property, it is in a position to receive the same or the stipulated rental."

It is the only case of which we know in which a demand was made during the so-called "breathing space" allowed the receiver, in which upon his failure to return the line promptly the stipulated rental was charged against the assets in his hands. We do not think it necessary to review the peculiar state of facts and the peculiar equities existing in that case. We content ourselves with saying that the circumstances of that case are so different from the circumstances of this that we deem it inapplicable. We may, however, point out that in that case the failure to comply with the demand for the surrender of the leased line was not due to the inability of the lessor to operate the line, and that the receiver was not obliged for the protection of the traveling public to continue in possession. The sole reason for the failure to surrender the line appears to have been that the receiver was experimenting in the interest of bondholders and of creditors. The equities of that case were all in favor of the lessor who was excluded. In the case now before the court it is otherwise.

[17] It is hardly necessary to point out that the New York Railways Company, the former Metropolitan Street Railway Company, as the lessor of the lines remains liable to the fullest extent to these appellants, the lessors, on the covenants in the leases. The question we

have considered goes simply to the extent of the preference which they are entitled to claim over fellow creditors.

[18] We have deemed it necessary, in order to determine these appeals, to consider the real nature of the appellants' rights. If the lessors are entitled to the rent stipulated in the leases from the date of the demand for the return of their lines, there would seem to be no necessity for postponing payment until the final accounting can be had. But if the claim for the stipulated rent cannot be sustained, and the lessors are entitled only to the net profits, as we have decided, then there is abundant reason for holding as the court below in fact decided that the claims could be best disposed of at the time of the final accounting.

Moreover, the appellants have asked this court to reverse the orders below, and to direct the receiver to pay forthwith to each of them for the use of their respective properties the same amount as though the lease had been adopted, and that question was the main question argued by the counsel for the respective parties.

For the reasons stated we think no error was committed in denying the application for immediate payment, and in deferring the matter until the final accounting. When that accounting takes place the court below is directed to proceed in accordance with the principle announced in this opinion.

Decrees affirmed.