### In re RADIO–KEITH–ORPHEUM CORPORATION.

### BURNETT v. IRVING TRUST CO.

### No. 445.

Circuit Court of Appeals, Second Circuit.
July 19, 1937.

William J. Donovan, of New York City (Theodore S. Hope, Jr., and David Teitelbaum, both of New York City, of counsel), for reorganization trustee.

Walter Brower, of New York City, and George W. Yancey, of Birmingham, Ala. (London & Yancey, of Birmingham, Ala., of counsel), for claimant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

All the essential facts have been stipulated and are in outline as follows: On May 27, 1925, the claimant leased the Ritz

Theatre in the city of Birmingham, Ala., to the Mudd & Colley Amusement Company for the term of twenty years beginning October 1, 1925, at an agreed annual rental which need not be stated. On October 31, 1925, the lessee assigned the lease to the Mudd & Mooney Trading Company, which did not covenant to pay the rent and on the same day sublet the premises to the Interstate Amusement Company for the remainder of the term of the head lease less one day and at an increase in rental of $10,000 per year which Interstate Amusement Company agreed to pay in addition to paying the rent reserved under the head lease. On May 21, 1930, at the city of New York, the Interstate Amusement Company assigned its sublease to the R-K-O Southern Corporation, a wholly owned subsidiary of the debtor, which assumed and agreed to discharge the obligations of Interstate Amusement Company to pay rent as provided in the sublease. At the same time and place, the debtor executed a written instrument under which it unconditionally guaranteed to Interstate Amusement Company, its successors and assigns, the full, prompt and complete performance of all the terms, covenants and conditions of the sublease to be kept, observed and performed by the sublessee even "in case the term thereby demised is cancelled or terminated by reason of a default on the part of the tenant thereunder or any assignee of said tenant" and was to remain bound notwithstanding any assignments or sublettings, "it being the intent hereof that the obligations of the Guarantor hereunder are primary." It was further provided that the debtor should designate and maintain in Alabama an agent for the service of process upon it.

R-K-O Southern went into possession of the premises and so continued until it was adjudicated a bankrupt on January 27, 1933. Meanwhile in 1932 negotiations between this debtor and the claimant had resulted in reducing the rent. On March 25, 1933, the trustee in bankruptcy of R-K-O Southern ceased to operate the theater on the premises and on April 8, 1933, disaffirmed the sublease. Thereupon the claimant, on May 1, 1933, after due notice to all parties in interest, sublet the premises to the best advantage but for a term and at a rental both less than those of the disaffirmed sublease.

Provided the claim is allowable at all, the amount for which it should be allowed in the event that the obligation survived the reletting of May 1, 1933 has been stipulated to be $47,172.81. The amount for which it should be allowed if the obligation then was terminated has been stipulated as $3,246.66.

The special master was of the opinion that the obligation of this debtor was not only in terms to Interstate Amusement Company, but solely for its benefit, and consequently could not be the basis of any claim whatever against the debtor by this claimant, the original lessor, in these proceedings on the theory of enforcement of a contract by a third party beneficiary and so recommended the disallowance of the claim in full. In re Gubelman, 13 F.(2d) 730, 48 A.L.R. 1037. The District Court concurring, the claim was disallowed in full and the claimant has appealed.

The issues are (1) whether the claim should be allowed for any amount, and (2) if so, whether for the greater or the lesser of the stipulated amounts.

As these proceedings are in the nature of a suit in equity, a third party beneficiary of a contract may have rights recognized and enforced, as in equity, though we have never accepted the New York rule of Lawrence v. Fox, 20 N.Y. 268, as left by Vrooman v. Turner, 69 N.Y. 280, 25 Am. Rep. 195. Therefore, we should apply the equitable principles as stated in Goodyear Shoe Mach. Co. v. Dancel (C.C.A.) 119 F. 692. See, also, Dancel v. Goodyear Shoe Mach. Co. (C.C.A.) 144 F. 679.

We accept the conclusion of the special master, as did the court below, that the promise of this debtor was not given for the benefit of the claimant but rather for that of Interstate Amusement Company, but do not understand that alone to be decisive. The test, on the contrary, is whether the situation is legally like that of a mortgagee of land seeking to enforce the mortgage against the grantee of the mortgagor where such grantee has taken title with the assumption of the mortgage and promised the mortgagor to pay it. Under such circumstances the mortgagee may maintain a bill in equity against the grantee to enforce the promise and that without the joinder of the mortgagor who is not an indispensable party. Keller v. Ashford, 133 U.S. 610, 10 S.Ct. 494, 33 L.Ed. 667. In the case just mentioned it was recognized that the promise of the grantee was only to, and for the sole benefit of, the mortgagor, so that there was no direct liability on the part of the grantee to the mortgagee. But as between them

selves the grantee became the principal debtor while the mortgagor was left as surety, since the mortgagee still had his promise to pay. And it was held that, although the mortgagee could not sue the grantee at law, he might in equity be subrogated to the rights of the mortgagor against the grantee. It follows, then, that if Interstate Amusement Company was liable to the claimant, this debtor, who promised to discharge such obligations in respect to the sublease as were those of Interstate, is liable in equity directly to the claimant under the principles stated. We do not understand that the debtor contests its liability to pay rent to Interstate Amusement Company under its contract running to it, and agree for present purposes, as it insists, that the debtor's undertaking was but to pay Interstate the rent reserved in the sublease.

■ The real question is whether Interstate was liable to the claimant for the rent, for upon that depends the claimant's right by way of subrogation to reach and enforce the debtor's promise to Interstate. As to that it should be noticed that the only direct promise to the claimant to pay rent to him ran from Mudd & Colley Amusement Company, the original lessee. However, although its assignee, Mudd & Mooney Trading Company, did not covenant to pay rent, it was bound to do so by privity of estate and so liable to the claimant for the rent, since it remained the lessee after it sublet the premises to Interstate and bound as an assignee of a lease who takes possession of the premises. See In re Famous Fain Co. (C.C.A.) 13 F.(2d) 529. The latter agreed as part of the rent reserved under that sublease to pay the rent under the head lease and so became as between Mudd & Mooney Trading Company and itself the principal, while Mudd & Mooney was liable as surety because of the latter's continuing obligation to the claimant since it remained the lessee. And so the debtor's obligation to Interstate is held by it as security for its obligation to the claimant, and this security may, in equity, be reached and enforced by the claimant. Silver King Coalition Mines Co. v. Silver King C. M. Co. (C.C.A.) 204 F. 166, Ann.Cas.1918B, 571. It is therefore the basis of a valid claim against the debtor in these proceedings.

■ There remains the question whether the debtor's liability for the rent was ended by the re-entry and reletting by the claimant upon notice after the default of R-K-O Southern Corporation; the disaffirmance of its sublease by its trustee in bankruptcy; and the abandonment of the premises.

It is argued in behalf of the debtor that such re-entry was an eviction of the tenant R-K-O Southern which ended the obligation to pay rent, even though under the terms of the sublease from Mudd-Mooney Trading Company to Interstate Amusement Company which was assigned to R-K-O Southern it was provided that no re-entry in accordance with the terms of the sublease should bar the right to recover rent and that upon abandonment the sublessor might relet for the account of the sublessee. So that, though Mudd-Mooney Trading Company might have relet, charged Interstate and therefore its assignee R-K-O Southern for any deficiency, Burnett could not do so. We cannot agree. There was an express covenant on the part of R-K-O Southern to pay the rent reserved in the sublease and this debtor undertook to perform that covenant. This created the express liability of the debtor for the payment of the rent which might become due the claimant from Mudd-Mooney Trading Company. It is of no moment that the obligation was to pay rent reserved in a sublease which later was terminated upon the tenant's default. It was a straight liability to pay sums made certain by reference to the terms of a lease and a sublease, and the fact that the claimant to whom Interstate was liable for the rent re-entered and relet as Interstate might have done did not relieve the debtor of its obligation to pay any deficiency.

Order reversed, with directions to allow the claim in the amount of $47,172.81 as stipulated.