## In re CONNECTICUT CO.[*]

### Claim of CONNECTICUT RY. & LIGHTING CO.

### No. 180.

Circuit Court of Appeals, Second Circuit.

March 7, 1938.

*Writ of certiorari denied 58 S.Ct. 1041, 82 L.Ed. ——.

James Garfield, of Boston, Mass. (Hermon J. Wells, of New Haven, Conn., and Laurens H. Rhinelander, of Boston, Mass., of counsel), for Connecticut Co.

Mendel Lurie, of New York City, for group of stockholders of Connecticut Railway & Lighting Co.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

December 19, 1906, the Connecticut Railway & Lighting Company leased to the predecessor of the New York, New Haven & Hartford Railroad Company all its trolley properties in Connecticut for 999 years. February 28, 1910, the New Haven sublet these properties to the debtor, reserving to the parties thereto the right of rescission without this claimant's consent. October 23, 1935, the New Haven petitioned the court below for reorganization under Bankr.Act § 77, as amended by Act Aug. 27, 1935, 11 U.S. C.A. § 205 and note, and on October 31, 1935, the Connecticut Company's petition for reorganization under section 77B, as amended by Act Aug. 29, 1935, 11 U.S.C. A. § 207 and note, was filed and approved. Trustees were appointed for the property of the New Haven but the Connecticut Company was permitted to remain in possession. This debtor was ordered to "reject, disaffirm, rescind or otherwise terminate" the said sublease and various other executory contracts relating to the claimant's trolley properties. On December 14, 1935, the court authorized the New Haven and its trustees to enter into a written agreement with this debtor terminating the sublease of the trolley properties, and such a contract was executed December 16, 1935. A report was filed on December 18, 1935, by the debtor with the court stating that the sublease had been terminated. The New Haven and its trustees filed a like report, on that day, stating that they had rejected the 1906 lease and various other executory contracts relating to the property covered thereby. November 16, 1936, the claimant repossessed the trolley properties pursuant to orders of the court below entered on the claimant's petition in each reorganization proceeding.

This claimant filed against each debtor substantially similar proofs of claim under the 1906 lease and the related agreements.

Emmet, Marvin & Martin, of New York City (George W. Martin, of New York City, of counsel), for Connecticut Railway & Lighting Co.

The debtors in their respective proceedings filed substantially similar answers and counterclaims to claimant's proof of claims. After hearings, orders were entered from which this appeal is taken. The items for damages on account of rejection of the main lease and an alleged contract to become a tenant were disallowed. The claimant appeals. Rentals accrued up to the filing of the petition, and taxes accrued up to· the rejection of the lease were allowed as unsecured claims for $304,472.13 and $27,858.75, respectively. The debtor appeals, and claimant appeals from the disallowance of its claim for additional taxes. Claims for alleged deficiencies in the property repossessed by claimant were disallowed except for an item of $173,-537.35; both the claimant and the debtor appeal from this ruling. The debtor was ordered to turn over to the claimant certain bus routes with busses· to operate them. The debtor appeals. The court allowed $151,243.73 as administration expenses for the use of the property, and the debtor appeals.

The 1906 lease of the trolley properties permitted the lessee, if it did not wish to operate any or all.of the properties, to delegate that right to another ·by either an assignment or sublease. It required the assignee to file with the claimant an express acceptance of the lessee's obligations, and thereupon it would become entitled to all of the lessee's benefits but subject to all the lessee's obligations connected with the property. A sublease did not require such acceptance. The New Haven, on February 28, 1910, sublet this claimant's trolley franchises and properties to the debtor. The sublease of the claimant's property was expressly subject to termination by· the written agreement of the parties to it, and knowledge or consent of the claimant was not required. Since this was a sublease, no acceptance was filed with· the claimant by the debtor. The New Haven covenanted with the debtor to pay to claimant the rent reserved in the head lease and to pay the indebtedness secured by any lien on the property sublet and save the sublessee harmless from loss arising out of the default in such payment. The debtor agreed to pay rent to the New Haven, not to claimant or its bondholders or sinking fund, as provided in the main lease. The debtor continued in possession of claimant's trolley properties until the latter repossessed them on November 16, 1936, during these reorganization proceedings.

Claimant acquired no right by the sublease, which it could enforce to hold the debtor for rent. Claimant's contention is that it became a creditor beneficiary of the debtor's promise to pay rent. The contract expressly required payment by the debtor to the New Haven and by the New Haven to the claimant and its bondholders and sinking fund. Consequently, the claimant was but an incidental beneficiary of the promise in the sublease to pay rent, and an incidental beneficiary acquired by virtue of the promise no right against the promisor or promisee. American Law Institute, Restatement of Contracts, § 147.

In these proceedings under section 77B, 'the claimant's right as a creditor beneficiary depends on general equitable principles. In re Radio-Keith-Orpheum Corp., 2 Cir., 91 F.2d 1004. On July 6, 1926, claimant, New Haven, and the debtor executed an agreement under which new rights are claimed against the debtor. It was provided that the original lessor agrees that "on the contingency of the termination of the Original Lease before expiration of its term for any cause other than a default by The Connecticut Company, it will treat said The Connecticut Company * * * as entitled to the continuance of the leasehold privileges in said demised electric railway properties conveyed to it" by the sublease of 1910. But it was provided that the rental agreed to be paid by the debtor in the sublease continue to be paid when due to the New Haven. The intent was recited to be to prevent the debtor from suffering a forfeiture in the event of the termination of the head lease. The court below properly found this to mean to give to the debtor the option, providing the rental continued to be paid, to remain as tenant after a termination of the head lease, but fails to disclose any obligation on the part of the debtor to become a tenant. The option was that the tenancy should continue by the claimant becoming a party to the sublease, but it was subject to rescission by the sole action of the New Haven and the debtor. And the court found that there was nothing in the 1926 agreement or any other part of the record to impair or ·abrogate this right of rescission. Consequently, when the sublease was first rescinded and the head lease

subsequently terminated, there was nothing left as to the sublease out of which the rights and obligations of a tenancy could arise. The debtor's option to continue as a tenant was conditioned on the contingency "for any cause other than a default by The Connecticut Company," which meant for any cause other than a default participated in by the debtor. The New Haven was always in a position to perform the lessee's obligations, and a termination could therefore occur only if the New Haven was in default. Conceivably, the lease might be terminated for the New Haven's default even though the debtor had fulfilled all its obligations to the New Haven. It could not be terminated for failure of the debtor unless the New Haven itself committed some default. The debtor committed a default in its obligations to pay rent to the New Haven. It has paid no rent to any one since the initiation of its reorganization proceedings, and its failure, coupled with that of the New Haven to pay rent under the head lease, constituted the default which resulted in the termination of that lease. The lease was terminated therefore for a cause other than a default of the debtor.

In the 1926 agreement, the New Haven directs the debtor to pay to the parties entitled under the head lease the rental which under the sublease the debtor had covenanted to pay to the New Haven. It was agreed that payments so made would be in full satisfaction pro tanto of the debtor's obligation to pay to the New Haven and the New Haven's obligation to pay to the claimant. The claimant agreed to receipt for them to both the debtor and the New Haven. Section 2 of the 1926 agreement shows that it was intended to grant to the debtor permission to pay rent direct to the claimant or the bondholders or sinking fund rather than to the New Haven if the debtor so desired at any time and for any reason. That it was not required to do so is apparent from the language of the section. The debtor continued to make all rental payments to the New Haven, and the latter continued to pay the rent to the claimant under the head lease.

When, on December 16, 1935, the New Haven and its trustees with the debtor rescinded the sublease by contract, they effectively terminated the sublease. The clauses thereof imposed no condition preventing the termination becoming immediately effective. There was no requirement of law for notice as to mutual rescission of a lease by the debtor in the bankruptcy court before rescission is effective. A promisor cannot be subject to liabilities greater than or different from those he assumed; the one for whose benefit a promise was made is in no better position than the promisee in this respect. Pennsylvania Cement Co. v. Bradley Contracting Co., 2 Cir., 7 F.2d 822, 827; Tuttle v. Jockmus, 111 Conn. 269, 149 A. 785; Restatement of Contracts, § 140.

The debtor and the New Haven having expressly reserved the right to rescind the sublease without claimant's consent, any rights of the latter as a third party beneficiary cannot be complained of because of a termination of the sublease. The court below found the 1926 agreement to be an assignment to claimant of rent as it should accrue under the sublease and a right to collect it after the rescission terminated. Any rights of claimant as a creditor of this debtor were at all times subject to termination by the joint action of the debtor and the New Haven. The petition filed in reorganization did not change this.

It was the duty of the debtor to its creditors to reduce all claims against the estate as much as possible; also to relieve itself of this burdensome obligation and to avoid claimant's demand. To release a solvent wholly owned subsidiary from a liability to its parent company is not a fraud on the latter's creditors. This debtor was released from all liability for rent accruing after rescission.

The District Court allowed as an unsecured claim against each estate $304,-472.13 for rent accrued up to October 31, 1935, the date of filing the petition under section 77B. The debtor argues that the net earnings for the period from the New Haven's petition (October 23, 1935) to this debtor's petition (October 31, 1935) is allowable as a preferred claim, amounts to $11,308.48, and should be deducted from the claim allowed for rent to the date of the petition filed in this debtor's proceeding, which makes the amount $293,163.65.

Since the debtor was liable to the New Haven and it to this claimant for the head rent, which included rent under the sublease, the claimant should be allowed its claim for the subrent by way of subrogation up to the time the sublease was can-

celed. In re Radio-Keith-Orpheum Corp., 2 Cir., 91 F.2d 1004. After cancellation, the right to collect any rent from this debtor was ended. The majority of the court, however, hold that the tripartite agreement of 1926 should be treated as an assignment of the subrents to the claimant and they rest claimant's rights against this debtor squarely upon assignment. Thus the claimant may succeed against the debtor for the rent to October 31, 1935, when the petition was filed and this, being a payment pro tanto of the New Haven's obligation to pay rent under the head lease, will entitle the New Haven to a credit therefor on its appeal.

From October 31, 1935, to December 18, 1935, the date of cancellation, can be treated as a period of control for deciding whether to affirm or disaffirm the sublease. The lease was canceled rather than disaffirmed, but it may be treated as adopted up to the date of cancellation and rent allowed as such up to that date. An allowance from December 18, 1935, to November 16, 1936, the date of surrender for use and occupation, was made, but this should have been adjusted to begin at the date of cancellation instead of at the date of the petition filed. The court allowed as an operating expense against the estate of the debtor in administration the amount of $151,242.73 which, as the court said, consisted of the stipulated rent from November 1 to December 18, 1935, and taxes and fire insurance for the same period and net earnings from December 18, 1935, to November 16, 1936, less advances and credits. The debtor has appealed from this ruling. It is well settled that in a receivership of public utility property where the lease is rejected, the receiver is not liable for rent as such but only for net earnings of the property under his administration. U. S. Trust Co. v. Wabash, W. R. Co., 150 U.S. 287, 14 S.Ct. 86, 37 L.Ed. 1085; Pennsylvania Steel Co. v. New York City Ry. Co., 2 Cir., 198 F. 721, 727, 729, 730; Id., 2 Cir., 216 F. 458, 463; American Brake Shoe & Foundry Co. v. New York Rys. Co., 2 Cir., 282 F. 523, 528; Westinghouse Elec. & Mfg. Co. v. Brooklyn R. T. Co., 2 Cir., 6 F.2d 547, 549. And the reason for the rule as stated is that the law of public utilities requires that the property be continued in operation for the benefit of the public and in order to protect the lessor's franchises. A receiver and, as here, the debtor, is required to operate the property until the lessor is in a position to take it over, and consequently he is accountable to the latter only for the net earnings if there are any and is entitled to recover for net losses.

But we are without jurisdiction to review this part of the debtor's appeal, also the item of $11,308.48 a preferred claim referred to above. These appeals of the claimant and debtor are under section 25a of the Bankruptcy Act, as amended, 11 U.S.C.A. § 48(a), and not by permission of this court. Section 24b, as amended by Act May 27, 1926, § 9, 11 U.S.C.A. § 47(b). The allowance of compensation for use and occupation are proceedings in bankruptcy, and an order thereon is a procedural order appealable only under section 24b. This cross-appeal is dismissed. See Gate City Clay Co. v. Dickey, 8 Cir., 39 F.2d 581; In re C. M. Piece Dyeing Co., 2 Cir., 89 F.2d 37.

The rent to be paid by the New Haven to the claimant and that promised to be paid by the debtor to the New Haven was to be tax free. It was to include payment of taxes, income taxes as well as property taxes, and the allowance must be increased so as to include income tax over this period. The allowance will be modified by adding the balance of the federal income tax, or $81,045.45.

It is unnecessary to the decision as to this claim to determine what may be the rights as between the claimant and the New Haven. It is sufficient to say that for the reasons stated the claimant has no right to further recovery against this debtor under the terms of the lease.

It is argued by the claimant that the debtor, in the agreement of 1926, made an executory promise to become its tenant on the termination of the original lease and has failed to perform. The 1926 agreement was made for the protection of the debtor and not to increase its obligations. It was subject to the contingency of the head lease being terminated prior to the end of its term without default on the part of the debtor. That contingency has never arisen; but, if it had, the debtor would not have been obliged but merely was granted an option to continue as tenant, and such tenancy would have been created by the claimant becoming lessor of the sublease rather than the debtor becoming lessee under the head lease. The

sublease was terminated prior to the termination of the head lease. See Hippodrome Bldg. Co. v. Irving Trust Co., 2 Cir., 91 F.2d 753.

The court allowed $173,537.35 for deficiencies in the property repossessed and disallowed other claims. While the debtor may be assumed, under the sublease, to have the burden of maintenance and restoration of property, this claimant cannot claim as against this debtor for such deficiencies. It is not entitled to claim as a creditor beneficiary under such an agreement. It filed against the New Haven an identical claim for alleged deficiencies in property repossessed. The $173,537.35 allowed represented the amount of encumbrances on certain busses which were paid off by the debtor out of the earnings of the administration period, pursuant to order No. 20, entered May 18, 1936, in this debtor's proceedings. This item should have been disallowed for any breach here involved, also occurred after the termination of the sublease, and the claimant may not assert this claim against this debtor, whatever may be the rights of the claimant against the New Haven.

The court below held that the claimant was entitled to possess and operate certain bus lines—New Haven-Bridgeport route No. 1; Hartford-New Britain route No. 2; Special bus routes for tobacco workers No. 3; Stamford-Darien route No. 5. It was ordered that four additional busses for the operation thereof be turned over and an accounting of the net revenues received by the debtor from such operations from November 16, 1936. The debtor has appealed from this ruling. It is clear that the obligations to make enlargements and extensions by the lessee under the lease is confined to the "territorial limits of the towns where the said properties are located." The debtor was in possession and control of the properties, and it was operating under a covenant to enlarge and extend the property of the claimant to acquire new franchises in the name of the claimant and to promote and preserve its interest. If in such a situation it enlarged and extended the routes and acquired franchises and developed the business when the sublease and head lease were terminated, they pass to this claimant and the latter is entitled to the benefits thereof.

All other claims advanced in behalf of the claimant were properly disallowed.

The order is modified accordingly.

AUGUSTUS N. HAND, Circuit Judge (concurring).

While it may make no difference in the final result whether the right of the claimant to prove for the period before October 31, 1935, and after that date to December 18, 1935, when the sublease was canceled, arose through subrogation, or through an assignment by the New York, New Haven & Hartford Railroad Company of rents accruing under the sublease, I cannot understand how any doctrine of subrogation is applicable to the situation. Nor can the claimant succeed on any theory of third party beneficiary such as was involved in Re Radio-Keith-Orpheum Corp., 2 Cir., 91 F.2d 1004, and in Silver King Coalition Mines Co. v. Silver King C. M. Co., 8 Cir., 204 F. 166, Ann.Cas.1918B, 571, for in the present case the agreements of sublease contained no promise to pay the rent to the claimant but only to the New Haven. The rights of the claimant to rentals prior to the cancellation of the sublease if existent at all, as I believe they were, must have arisen out of an assignment to it of such rentals effectuated by the direction of the New Haven in the agreement of July 6, 1926, to which the claimant was a party, to pay them directly to the claimant. The objection of the debtor to treating the agreement of July 6, 1926, as effecting an assignment of rents because the terms of the sublease of 1910 permitted a cancellation by the Connecticut Company and the New York, New Haven & Hartford Railroad Company is without merit. That the rent accruing prior to cancellation should belong to the claimant is in no way inconsistent with a right to cancel. The Connecticut Company was not obliged to enter into a new lease with the claimant, but had a mere option to do so which terminated upon the cancellation of the sublease. To the sum of $304,472.-13 allowed by the court below for rent accrued up to October 31, 1935, when the petition against this debtor was filed, should be added $108,904.20, representing taxes which the debtor in section 2 of the agreement of July 6, 1926, promised the claimant to pay. This sum, instead of $27,858.75 allowed for such taxes by the

District Court, is required in order to render the accrued rent tax free as provided in the main lease of 1906 and the agreement of 1910. The total claim accrued up to October 31, 1935, is allowable as a general claim.

For the period between October 31, 1935, and the date of cancellation of the sublease in December, 1935, an amount equivalent to the rent payable under the terms thereof might properly have been and was allowed as an operating expense of the estate in administration, for the reason that the debtor was in actual possession during that period and was not engaged in determining whether to affirm or disaffirm, but the sublease was canceled in December, 1935. For the period between the cancellation of the lease and November 16, 1936, when the claimant took over the premises, the amount of net earnings was properly allowed as an operating expense of the estate in administration, for the reason that the debtor remained in possession during that period. Even if net earnings, rather than rental value, should have been allowed for use and occupation during the period between October 31 and the date of cancellation of the sublease on December 18, 1935, the amount fixed by the court below for operating expenses of the estate in administration between October 31, 1935 and November 16, 1936, would only be reviewable in the event that an appeal had been allowed by this court under section 24b of the Bankruptcy Act, as amended, 11 U.S.C.A. § 47(b).