### JOHNSON v. EMERSON PHONOGRAPH CO., Inc.

### YELLIN v. SCHOLER et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1924.)

No. 149.

1. **Receivers ⟨⟩90—Duty to accept assets of value and reject assets of no value.**
    It is the receiver's duty to accept as part of the estate to be administered those assets which would prove of value to the estate, but those which are not of value are to be left outside the field of his receivership.

2. **Receivers ⟨⟩91—Not bound by lease during reasonable time to determine condition of affairs.**
    A receiver is entitled to a reasonable time to determine whether he will accept assets of problematical value, such as a lease, as part of the estate, and is entitled to take possession of the leased property and oper-

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ate it for a reasonable time for this purpose, and so, where receivers disaffirmed a lease within a month after their appointment, they were not bound by its covenants, though they might be liable for use and occupation.

3. **Judgment** &⊶544—**Receivers** &⊶174(5)—**Judgment of Municipal Court held not res judicata against equity receivers in action in federal District Court.**

Where lessor's petition to the District Court for permission to sue lessees and their equity receivers to enforce his rights as landlord was granted, with the reservation that any action against receivers for money judgment should be brought in the District Court, *held* that, though the receivers were perhaps properly joined as parties defendant, in view of Civil Practice Act N. Y. § 1415, as added by Laws N. Y. 1921, c. 199, there was no duty on receivers, who had disaffirmed the lease, to appear in dispossess proceedings in the Municipal Court of the City of New York, and the final order of such court was not res judicata as to receivers' liability for rent.

4. **Landlord and tenant** &⊶7—**Permission by tenant to receivers to leave chattels on premises held not to create relation.**

Where equity receivers disaffirmed the lease of premises occupied by the business under receivership, the permission of the other tenant to the receivers to leave certain chattels on a part of the premises occupied by it did not create the relation of landlord and tenant between the owner of the premises and the receivers, and did not subject the receivers to any charges for use and occupation.

5. **Use and occupation** &⊶1—**Relation of landlord and tenant must exist.**

An action for use and occupation lies only where the relation of landlord and tenant exists.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Mary S. Johnson against the Emerson Phonograph Company, Inc., in which Jacob Scholer and another were appointed receivers of defendant company. From a decree granting the claim of Harry Yellin for allowance of rent as an administration expense, receivers appeal. Reversed, with directions.

The receivers appeal from a decree of the District Court for the Southern District of New York adjudging that $9,541.74, with interest, shall be paid to one Yellin as an expense of administration of an estate in equity receivership. Yellin submitted to the District Court his petition, dated December 2, 1921, wherein he stated (1) that he was the owner of a building in Long Island City; (2) that he and Emerson Phonograph Company entered into an agreement whereby he let Emerson Company 50.750 square feet for 10 years, to commence June 1, 1920, at a rental of $35,000 per year; (3) that Emerson Company entered into possession and "remains at least in partial possession" of the premises, the balance of the space being occupied by United State Record Manufacturing Company, a corporation associated with Emerson Company; (4) that on December 9, 1920, Scholer and Matters were appointed receivers in the above-entitled suit; (5) that the rent was paid until December 1, 1921, but certain amounts for live steam and water bills were unpaid; (6) that "the tenant is therefore indebted to your petitioner accruing as of December 1, 1921, in the sum of $8,750, representing three months' rent, commencing with said December 1, 1921, balance of the power bill of $574.34 and the amount of the water bills of $217.40, making a total of $9,541.74, which is justly due and owing to your petitioner from the Emerson Phonograph Company, Inc., and from the United States Record Manufacturing Company, and from Jacob Scholer and Thomas H. Matters as receivers of the Emerson Phonograph Company, Inc.; "that your petitioner is

---

&⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

desirous of taking such steps with respect to collecting the amount due to him from the persons and corporations responsible on the said lease, and is desirous of taking such further steps with a view to dispossessing the persons in possession of said premises, as he may justly be entitled to. Your petitioner therefore prays for an order of this court permitting your petitioner to institute such proceedings and such actions, as in said court or tribunals having jurisdiction of the said matter against the Emerson Phonograph Company, Inc., Jacob Scholer and Thomas H. Matters as receivers, and such other person, persons, or corporations as may be in possession of the said premises."

Upon this petition, the District Court, on December 8, 1921, made the following order: "Ordered, that the said Harry Yellin be and he is hereby permitted and empowered to bring such action or actions, institute such proceeding or proceedings as may be necessary or proper in order to enforce his rights as landlord of the premises heretofore leased by him to the Emerson Phonograph Company, Inc., whether the same be by bringing proceedings to dispossess the tenant and undertenants of the said building, and to include in such action or actions Jacob Scholer and Thomas H. Matters as receivers of the Emerson Phonograph Company, Inc., providing only, however, that any action or proceeding which Harry Yellin, the petitioner, may desire to institute in order to obtain a money judgment only against the said Jacob Scholer and Thomas H. Matters as receivers of the Emerson Phonograph Company, Inc., shall be commenced or instituted in this court only."

Dispossess proceedings were then brought in a Municipal Court of the City of New York by Yellin against Emerson Company, Scholer and Matters as receivers, and United States Record Manufacturing Company. The receivers did not appear, and a final order was made by the Municipal Court justice awarding possession of the premises to Yellin and a warrant of dispossess was thereupon issued. Yellin then petitioned the District Court for an order directing the receivers to pay him $9,541.47 as an administration expense. The matter was referred to a special master. The report of the special master found as stated infra. Emerson Company let all the space which it had leased to one Colen, who, in turn, assigned this sublease to United States Record Manufacturing Company.

When the receivers were appointed on December 9, 1920, the last-named company was in possession of all the space. A part of this space, however, was occupied by a printing plant and other chattels belonging to Emerson Company. By correspondence beginning January 3, 1921, the receivers through their attorney notified Yellin's attorney that they did not adopt the lease. While no arrangement was made by Yellin with United States Record Manufacturing Company, it nevertheless paid direct to him and he accepted the rent reserved until December 1, 1921. The receivers never paid any rent. By arrangement with United States Record Manufacturing Company the property in custody of the receivers referred to supra was permitted to remain in the space in possession of United States Record Manufacturing Company, without rent or any agreement therefor. Prior to December 1, 1921, some of this property was moved out of the premises; none was ever moved in.

The special master, however, reported that the final order of judgment of the Municipal Court was res adjudicata against the receivers and concluded that the receivership estate was liable for the amount involved as an administration expense. He based his opinion on Prince v. Schlesinger, 116 App. Div. 500, 101 N. Y. Supp. 1031, affirmed 190 N. Y. 546, 83 N. E. 1130. The District Court sustained this view.

David W. Kahn, of New York City, for appellants.

Kamen & Ostertag, of New York City (Bernard I. Kamen, of New York City, of counsel), for appellee.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). [1, 2] The duty of receivers such as those in this case has been recently restated by this court as follows:

"It is the receiver's duty to accept as part of the estate to be administered for the creditors those assets which will prove of value to the estate. Those which are not of value are to be left outside the field of his receivership. As to those assets which are of problematical value, it is necessary that the receiver should be allowed a reasonable time within which to determine to which class of assets they belong, whether they are of the class which he should administer, or to the class which he is to let alone. In order that he may determine, for example, whether he should assume a lease belonging to the insolvent estate, he is entitled to take possession of the leased property and operate it for a reasonable time. By the mere act of taking possession he does not adopt the lease and become bound by its covenants. He is entitled to hold for a reasonable time, to ascertain the situation of affairs, and while so holding he is not bound by the covenants of the lease." American Brake Shoe & Fdry. Co. v. New York Railways Co., 282 Fed. 523, 528.

The receivers here promptly disaffirmed the lease and thus acted within a reasonable time. Thereafter the receivers were not bound by the covenants of the lease. The only claim which Yellin might have had against them was one irrespective of the leases; i. e., for use and occupation of the space in which the printing plant and other chattels of Emerson Company remained after their appointment, and this only if the relation of landlord and tenant had been set up between Yellin and the receivers, qua receivers. In Yellin's petition, dated December 2, 1921, it will be noted that he stated that he desired to take steps to obtain relief in two different respects: (1) Collection of the amount due him from those responsible on the lease; and (2) dispossession of those in possession of the premises.

[3] By the order of December 8, 1921, the court distinctly provided that any proceeding instituted by Yellin to obtain a money judgment only against the receivers should be commenced in the District Court. By this reservation, it is plain that the District Court did not permit Yellin to test in any other court any questions arising out of the disaffirmance of the lease or any claim, asserted on any ground, which might result in what the order called a "money judgment," and which manifestly meant any claim for which the receivers in their official capacity would be compelled to respond by the payment of money. Whether or not the receivers had successfully disaffirmed the lease and whether or not Yellin had any money claim against the receivers was to be tried out in the District Court and not elsewhere.

When, therefore, Yellin brought the dispossess proceeding in the Municipal Court, there was neither duty nor occasion for the receivers to appear. That proceeding could not result in a money judgment, and could only award possession of the premises to the landlord, and the receivers, by their disaffirmance, were not in possession. It was perhaps necessary, and in any event proper, for Yellin to join the receivers as parties in the proceeding, because Emerson Company was the lessee on the lease, and the undertenant, United States Record Manufacturing Company, became such undertenant because of the right of Emerson Company to sublet the entire space concerned to

United States Record Manufacturing Company. See section 1415, New York Civil Practice Code, quoted in the margin.[1]

In this dispossess proceeding, Yellin naturally desired to cut off any claim of possession by the undertenant, under whatever circumstances and for whatever reason that claim might be asserted. In view, however, of the reservation in the order of December 8, 1921, the final order in the dispossess proceeding in the Municipal Court was in no sense res adjudicata, so as to bring the case within the principle of Prince v. Schlesinger, supra, and in no manner adjudicated that the receivers were tenants.

The Prince Case differs from that at bar in at least three respects: First. Schlesinger was presumed to have been appointed permanent receiver by reason of chapter 60 of Laws of 1902 of New York. As pointed out by Mr. Justice Houghton, such receivers take title while chancery receivers do not. Second. Schlesinger, as receiver, entered into the possession of the leased premises and held over after default in the payment of rent. Third. There was no order such as that of December 8, 1921, in the case at bar reserving jurisdiction over the substantial controversy. From what has been stated, supra, it was apparent that the court below erred when it held that the Municipal Court's final order was res adjudicata and precluded the receivers from denying that they were tenants under the lease in the proceeding heard before the special master.

[4] Assignment of error No. 8 asserts that the order below is erroneous because, inter alia, it failed to adjudicate that the receivers were under no liability to Yellin either for rent or for use and occupation. Many cases have been cited by counsel in respect of the relation existing between a lessor, on the one hand, and a lessee and undertenant or subtenant, on the other. These cases relate to situations where the conventional relationship of landlord and lessee exists, and they deal mainly with the proposition that the possession of the undertenant is possession by the tenant, and that the fact that rent is accepted by lessor from the undertenant does not necessarily constitute a surrender of the premises by the lessee or the acceptance of such a surrender by the landlord. No such question arises in this case. We have already pointed out that the lease was disaffirmed. The result is that there never was the relation of landlord and tenant as between Yellin and the receivers. The premises in question were occupied solely by United States Record Manufacturing Company after December 1, 1920, and the permission of that company to the receivers to leave certain chattels in a part of the premises occu-

---

[1] "The applicant must present to the judge or justice a written petition verified in like manner as a verified complaint in an action, describing the premises of which the possession is claimed and the interest therein of the petitioner or the person whom he represents, stating the facts which, according to the provisions of this article, authorize the application by the petitioner and the removal of the person in possession, naming or otherwise intelligibly designating the person or persons against whom the special proceeding is instituted, and, if there are two or more such persons and some are undertenants or assigns, specifying who are principals or tenants and who are undertenants or assigns, and praying for a final order to remove him or them respectively. (Added by Laws 1921, c. 199, in effect October 1, 1921.)"

pied by it did not, in any manner, create the relation of landlord and tenant between Yellin and the receivers, and did not subject the receivers to any claim for use and occupation.

[5] As briefly stated in 39 Cyc. 853:

"An action for use and occupation lies only where the relation of landlord and tenant exists."

In order to avoid misunderstanding, we may state that what is here decided is without prejudice to a claim for damages, if any, of Yellin against Emerson Company, which may have arisen because of the disaffirmance of the lease. We are passing solely upon the question as to whether or not Yellin has any claim against the receivers which must be paid as an administration expense.

We hold that he has no such claim, and hence the decree is reversed, with costs, and the District Court is instructed to enter a decree in accordance with this opinion.