## EVANS v. WILLIAMS.

### In re HITT LUMBER & BOX CO.

(Circuit Court of Appeals, Sixth Circuit. November 8, 1921.)

No. 3480.

1. **Bankruptcy ☜440—Order reviewable by appeal or petition to revise.**

An order settling the accounts of a receiver, based on actual receipts and expenditures, is an ordinary administrative order subject to revision only in matter of law under Bankruptcy Act, § 24b (Comp. St. § 9608b); but, where it goes further and adjudges the receiver personally liable for negligence in continuing to conduct the business of the bankrupt at a loss, it is of the nature of a decree made in a plenary suit arising in bankruptcy proceedings and is appealable under section 24a.

2. **Bankruptcy ☜303(3)—Receiver held not liable for loss incurred in operation of manufacturing plant.**

Evidence considered, and *held* not to sustain a decree finding that a receiver appointed for a manufacturing company, pending hearing on an involuntary petition in bankruptcy against it, with directions to operate its plant in order to conserve the property as a going concern, and who operated it less than five months, was chargeable with negligence which rendered him personally liable for the loss resulting from such operation in continuing it after he knew, or in the exercise of reasonable diligence should have known, that the loss was substantial and continuing.

Petition to Revise an Order of and Appeal from the District Court of the United States for the Southern Division of the Eastern District of Tennessee; Edward T. Sanford, Judge.

In the matter of the Hitt Lumber & Box Company, bankrupt; Silas Williams, Trustee. On appeal and petition to revise by H. M. Evans to review an order of the District Court holding him liable for losses incurred in operation of bankrupt's business by him as receiver. Reversed.

Nathaniel H. Maxwell, of Cincinnati, Ohio, and Frank Spurlock, of Chattanooga, Tenn. (James M. Trimble, of Chattanooga, Tenn., on the brief), for petitioner and appellant.

J. W. Thompson, of Chattanooga, Tenn. (Lusk & Thompson and Finlay & Campbell, all of Chattanooga, Tenn., on the brief), for respondent and appellee.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DONAHUE, Circuit Judge. This is an appeal from the decree of the United States District Court for the Eastern District of Tennessee, confirming an order of the referee theretofore made, holding H. M.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Evans former receiver of the bankrupt, the Hitt Lumber & Box Company, liable to the bankrupt estate in the sum of $11,758.51, covering losses incurred by him in the operation of the business of the bankrupt after he knew or should have known that the business was being operated at a substantial and continuing loss.

[1] The appellee has filed a motion to dismiss this appeal for the reasons:

(1) The order complained of was "an administrative order in the ordinary course of bankruptcy between the filing of the petition and the final settlement of the estate."

(2) The order complained of was summary in character and is subject to revision only in matter of law under section 24b of the Bankruptcy Act (Comp. St. § 9608b).

It appears from the record that on July 2, 1917, an involuntary petition in bankruptcy was filed for the purpose of having the Hitt Lumber & Box Company, a going manufacturing corporation, declared a bankrupt. To this petition the Hitt Lumber & Box Company, on the 3d day of July, 1917. filed an answer denying the charge of insolvency and the act of bankruptcy averred in the petition.

On July 7, 1917, and before the adjudication in bankruptcy, H. M. Evans was appointed receiver of the estate of the alleged bankrupt with authority to operate its factory as a going concern.

On January 26, 1918, the receiver submitted to the court his final report as receiver. On April 5, 1918, the Cornelius Lumber Company and other creditors of the bankrupt filed an intervening petition excepting to certain specific items of the receiver's account and also praying that the receiver be held liable for losses occasioned by the operation of the business after he knew or should have known that the business was being operated at a loss.

It is unnecessary at this time to determine whether it was proper for the intervening creditors to incorporate in the same pleading, exceptions to the receiver's account, and a separate cause of action to recover from the receiver personally, damages sustained by the bankrupt estate by reason of his negligence, for the reason that the exceptions to the account were fully heard and determined, and the receiver's account fully settled and adjusted, prior to the final hearing upon this particular issue.

The account of the receiver was necessarily confined to the property and assets coming into his hands and the expenses incurred and the payments made by him in the course of his receivership. The receiver asked for the allowance and approval of his account on the basis of actual receipts and actual disbursements. The order and decree of the court determining the amount of property with which the receiver should be charged and the credits that should be allowed to him for disbursements on behalf of the estate was an administrative order in the ordinary course of a bankruptcy proceeding and subject to revision only in matter of law under section 24b of the Bankruptcy Act.

The cause of action stated in the intervening petition does not relate to specific assets of the bankrupt estate in the possession of the receiver or that ever came into his possession by virtue of the receiver-

ship. It does not ask that he be charged with other property or assets of the bankrupt, in addition to the property and assets shown in his account; nor does it challenge the correctness of specific items of credit asked by the receiver on the ground that such payments were not in fact made or, if made, were extravagant. The exceptions to the account, which exceptions are a separate and distinct part of this intervening petition and constitute no part of the cause of action stated therein, cover all objections of this character.

On the contrary, the cause of action stated in the intervening petition is in the nature of a plenary suit to recover from the receiver, out of his private property, losses sustained by the bankrupt estate by reason of the alleged negligence of the receiver in continuing the operation of this plant, after he knew or in the exercise of ordinary care and diligence should have known that the factory was being operated at a loss.

The issues joined by the answer of the receiver to the allegations contained in the cause of action stated in the intervening petition present a controversy arising in a bankruptcy proceeding. The decree of the court upon these issues is clearly distinguishable from a mere administrative order in the ordinary course of bankruptcy. Babbitt v. Dutcher, 216 U. S. 102, 30 Sup. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; Moody v. Bank, 239 U. S. 374, 36 Sup. Ct. 111, 60 L. Ed. 336; In re Veler, 249 Fed. 633–645, 161 C. C. A. 543; Barnes et al. v. Pampel, 192 Fed. 525, 113 C. C. A. 81.

For the reasons above stated the motion to dismiss the appeal must be overruled.

This case, however, is also here upon a petition to revise this same order and decree of the District Court, so that in any event this court would have jurisdiction, either upon the appeal or upon the petition to revise, to determine the question presented; but in so far as the determination of the weight of the evidence is concerned, it is important to the appellant that the court should consider this question upon the appeal.

[2] As heretofore stated, this case involves but one question, and that is the question of the correctness of the decree of the District Court confirming the order of the referee finding H. M. Evans, former receiver, liable to the bankrupt estate in the sum of $11,758.51, for losses sustained in the operation of the business of the bankrupt after he knew, or in the exercise of reasonable diligence should have known, that the business was being operated at a substantial and continuing loss.

It does appear from the evidence and the admission of counsel that the operation of this business by the receiver from the 7th of July, 1917, until November 30, 1917, when the Hitt Lumber & Box Company was adjudged a bankrupt and a trustee elected, resulted in a substantial loss to the bankrupt's estate. It is insisted, however, that the loss found by the referee is largely in excess of the actual loss sustained for the reason that there was appraised and charged to the receiver at the time he took possession of this property a large amount of stock on hand that was of value to the plant as a going concern but

of little or no value after the discontinuance of operation; that a large amount of this stock was on hand at the time of final appraisement made after the termination of the receivership when the factory was no longer a going concern and, therefore, was not appraised and no credit whatever was given to the receiver therefor. It is further insisted that the finding of the referee is excessive for the reason that the referee, in arriving at the amount named, did not take into consideration interest, insurance, and taxes paid by the receiver, that would necessarily have been expended regardless of whether the factory was operated or not. However, in view of the conclusion this court has reached upon all the evidence in this case, it is unnecessary to determine whether these credits should have been allowed to the receiver by the referee, in the ascertainment of the actual loss.

On the first hearing the referee found that—

"There is no evidence to sustain the second prayer of the petition, to the effect that the receiver be required to account for loss sustained by his operation of the business after he knew or should have known that said business was unprofitable and was being operated at a loss. Said second prayer of the petition is therefore overruled and disallowed."

The District Court, upon petition to review filed by the Cornelius Lumber Company et al., reversed this finding of the referee and remanded the case to the referee for further proceedings to determine the question of such liability in accordance with its opinion. The court in its opinion, which by the express terms of the decree was made controlling upon the referee in his further hearing touching the liability of the receiver and the amount of such liability, in discussing this particular question among other things said:

"The order made by me July 7, 1917, authorizing the receiver to continue the operation of the business of the bankrupt so long as in the opinion of the court it should be proper so to do, specifically provided that the receiver should make monthly reports to the court of the profit and loss in such operation, and that if at any time it should appear that the business was unprofitable and being operated at a loss, he should report such fact to the court, to the end that proper steps might be taken to discontinue such operation and the incurring of further loss. * * * The receiver's first report, filed in the clerk's office August 17, 1917, covering his operations from July 3d to July 31st, showed a net operating loss of $784.78. This report was not, however, called to the attention of the court. The second report, filed in the clerk's office September 18, 1917, showed a net gain of $1,016.04, in the operations for August. This report was likewise not called to the attention of the court. * * * As soon as the receiver in the exercise of reasonable diligence knew or should have known that the business was unprofitable and being operated at a substantial and continuing loss, it was his duty to report this fact to the court, not merely by filing a report showing such loss in the office of the clerk or with the referee (to whom no general reference had been made), but by bringing or causing the same to be brought to the attention of the judge of the court for action thereon."

The referee, in response to the order and decree of the District Court reversing his former order and directing him to proceed in accordance with the opinion filed by the district court, found upon the second hearing that—

First. "Said H. M. Evans is liable to the bankrupt's estate in the sum of $11,758.51, covering losses incurred by him in the operation of the business of

the bankrupt after he knew or in the exercise of reasonable diligence should have known that the business was being operated at a substantial and continuing loss."

This finding of the referee was approved and confirmed by the District Court, and it is this decree of the District Court from which this appeal is taken.

The District Court found upon the petition to authorize the receiver to conduct the business of the alleged bankrupt that—

"It is necessary in and to the best interest of the estate of the said Hitt Lumber & Box Company and all persons interested therein, either as creditors or stockholders, that the business of the said Hitt Lumber & Box Company be conducted by the receiver heretofore appointed by the referee as a going concern, and that it is necessary for the preservation of said estate for the property of the said Hitt Lumber & Box Company to be held by said receiver with full power and authority to conduct and operate his business as a going concern, and that great loss will accrue if the mills and business of the company should remain idle and shut down during the pending of the present proceedings against it."

This finding of the court must not be overlooked in determining the question of the liability of the receiver or in determining the actual loss occurring during the receivership for the reason that a loss in operation may be more than compensated by maintaining the value of the plant as a going concern. If therefore the receiver is liable for the loss in operation, a fortiori, he is entitled to credit for maintaining the value of the plant as a going concern, if in fact the operation of the plant accomplished that result, regardless of whether or not the benefits of maintaining such value were lost to the estate by reason of the delay in the sale of the same after the termination of the receivership.

This phase of the case seems to have been entirely overlooked by the referee both in determining the receiver's liability and in the ascertainment of the actual loss; nor did the District Court make any reference thereto in its opinion approving and confirming this item of the referee's report.

It must also be remembered that the Hitt Lumber & Box Company was not adjudged a bankrupt until the receivership terminated on November 30, 1917, and that for this reason the receiver represented not merely the creditors but also the alleged bankrupt.

The order directing the receiver to operate the mills and factory of the alleged bankrupt directed him to make reports to the court, at least once a month, of all receipts and disbursements and as accurately as may be, the profit or loss in the operation of said mill. On August 17, 1917, the receiver filed in the clerk's office a report covering the July operations. On the 18th of September he filed his second report covering the month of August. This was in direct compliance with the order of the court directing the receiver to make reports to the court at least once a month. The order did not require him to report to the judge of the court, but to the court itself, and the filing of these reports with the clerk of the court was a full compliance with the order. The receiver having complied with this order for these two months cannot be charged with any default on his part merely because

the attention of the court was not called to these reports either by the clerk, the alleged bankrupt, or any of its creditors.

There is some conflict in the evidence as to whether a report was filed in October covering the operations for September. The receiver testified that he filed such a report. The clerk's records do not show that such a report was filed, but neither does the clerk's record show that any report was filed in September covering the month of August. Nevertheless, it is admitted in the brief for appellee that such report wts filed on the 18th of September and the District Court reached the same conclusion. It is certain, however, that such a report was prepared and that the receiver believed in good faith that it had been filed. This is substantially true of the November report covering the October operations, although it does appear that owing to the illness of one counsel and the absence of the other, that report, was not actually filed. There is nothing in the evidence to show that either of these reports was purposely withheld by the receiver or that he was not acting in the best of faith and fully believed they had been filed with the clerk of the District Court in accordance with the order of that court. It also appears by the record that the receiver's attention was not called to the fact that he had failed to file a report in October and November, or that any of the interested parties now seeking to hold this receiver liable moved the court to require the receiver to make and file such report. It is therefore apparent that this receiver cannot be held responsible for the losses occurring in the operation of this plant during his receivership solely upon the theory that he failed, neglected, and refused to file monthly reports. The fact, if it is a fact, that he failed to filed a report covering September, and also failed to file a report covering the month of October, can be considered only in connection with other evidence, if any, tending to show negligence on the part of the receiver.

There is no claim on the part of the trustee or of any of these creditors that the receiver was acting in bad faith. On the contrary, counsel for the intervening creditors, upon the hearing before the master, expressly repudiated making any claim as to bad faith, dishonesty, or intentional wrong doing on the part of the receiver. Therefore, if the receiver is liable for the losses that occurred in the operation of this plant, his liability must be based upon his gross and culpable negligence and misconduct in continuing the operations after he knew or ought to have known that by so doing he was not conserving but dissipating the assets of the bankrupt.

As preliminary to the discussion of the evidence relating to this subject, it might be well to call attention to the fact that this is not an inquiry into the business ability of the receiver. That was a question for the court and the interested parties to determine at the time of his appointment. However, by accepting this appointment, coupled with the subsequent authority to operate the plant he did undertake, not only to give to this business, in so far as he was capable of so doing, such reasonable care and attention as an ordinarily prudent business man would give to his own affairs, but also to obey and observe the orders of the court appointing him as such receiver. If he has

done this, he has fully discharged his obligation to the bankrupt and its creditors, regardless of results.

It is claimed that the monthly reports that he prepared, two of which it is admitted he filed with the clerk of the court, show on their face such loss in the operation of this plant as would suggest to an ordinarily prudent business man that further operation should be discontinued, and that therefore it became his duty, by the express terms of the order of the court under which he was acting, to report that fact to the court.

An expert accountant introduced by the intervening petitioners testified that he had analyzed the receiver's several statements and that from his examination and analysis he arrived at the following result:

That the report for July showed a net loss of $748.88. The report for August, a net gain of $1,800.82. The report for September, a net loss of $5,336.81. The report for October showed a net gain for October of $3,329, or a total loss from July 4th to October 31st of $999.77. Keeping in mind that the chief purpose of this operation was to preserve the value of the property and plant as a going concern rather than the actual earning of profit in the operation of the plant, it would not appear that the net loss as shown on the face of these reports, for these four months, was of such proportion as to alarm either the receiver, the court, the bankrupt, or its creditors. In fact, if that were really the true situation of affairs, it is not probable that any one would now be complaining.

The receiver's attitude in reference to these reports is, perhaps, fairly explained by the report prepared by him in October covering the September operation showing an aggregate loss for July, August, and September of $957.68. In this report the receiver stated that the October business showed an increase in sales and that he expected by the close of October to have recouped the September losses and to keep the plant as a going concern without diminution of assets, but that he did not believe it wise to continue the receivership operations indefinitely and submitted to the court and interested parties the advisability of closing the receivership as soon as a trustee in bankruptcy could be selected.

The result as shown by the October report justified, in a measure at least, the receiver's prophecy in reference to that month's business. Had it been filed with the clerk of the court and had it come to the attention of the court and interested parties, it would not have suggested that the operations ought to be discontinued immediately.

Many private corporations and individuals meet with like experience in their private affairs, and yet they seldom or never abandon an enterprise and sacrifice the value of their property as a going concern upon such a showing. It is therefore apparent that all of these reports considered together from the beginning of operations until the 31st of October, inclusive, taken at their face value, were not such as would make the failure of the receiver to apply to the court for an order to discontinue business, culpable negligence on his part.

No claim is made, either in the pleadings or in the evidence, that these reports were manufactured by the receiver for the purpose of de-

ceiving the court or the interested parties. The admission in this record that no claim is made as to bad faith or dishonest purposes on the part of the receiver necessarily includes an admission that he believed, in good faith, that these reports were absolutely correct. Notwithstanding these admissions, however, and but for which it appears by the record that evidence would have been offered tending to establish the good faith and honest purpose of the receiver, it is urged that the testimony of the receiver himself shows an ulterior motive in continuing operation wholly inconsistent with good faith on his part. The receiver testified in substance that he was placed there with instructions to see if the plant could be made a paying investment, and if it could there were men willing to put their money into it, but they wanted to give it a fair trial and did not think two months or three months was a sufficient time. The District Court also referred to this evidence as tending to show bad faith on the part of the receiver. It appears, however, from all the evidence and particularly from the findings of fact by the District Court, as a basis for the order to operate this property, that this was in fact the ultimate purpose of the receivership and that it would have been largely to the advantage of the bankrupt estate and its creditors to secure a purchaser of this plant as a going concern. Certainly an honest purpose on the part of the receiver to make such a business showing as would induce men of means to purchase this property as a going concern could not be reprehensible on his part. It is also apparent that if he did not, in good faith, believe that he could make such a showing as would induce the investment of outside capital in this enterprise, then he must have known that for this purpose, at least, further operations would be useless.

It is also now insisted, notwithstanding the admission in the record to the contrary, that the receiver was not acting in good faith when he directed his bookkeeper to increase his inventory of November 1st by the sum of $3,000 representing money spent during the entire period of his operation for the handling of 2,000,000 feet of lumber; the amount of lumber then on hand being comparatively small in amount. There is some dispute as to when this item was added to the inventory. It is found in the final report of the condition of the business November 30, 1917, filed with the referee January 26, 1918. There is no claim that the receiver did not properly expend this money, but the claim is that it should not have been entered as an asset of the bankrupt estate.

This contention is undoubtedly correct; nevertheless the evidence of the receiver fairly explains why he thought it was proper to take credit for this expenditure in his account. In reference thereto he testified in substance that he discussed it with both Mr. Wert and Mr. Conroy, and that all of them thought it was fair and just, that he called attention to it in his final report, stating why it was deducted, and that he made no effort to conceal it from any one. This inventory clearly shows on its face just exactly what this item covers, so that it is hardly possible it could deceive or mislead the court or any interested party or that it was intended to do so.

The receiver could not, and of course was not expected to, manage a business of this magnitude without expert assistants. He did employy

276 F.—42

a competent and experienced man as general manager and another competent and experienced man as bookkeeper. Had he failed to do this, he would have been guilty of gross negligence. While it is suggested that these men purposely falsified the accounts and delivered to him false inventories, nevertheless it is not contended that the receiver had any reason to believe that these inventories and accounts were not correct, other than that from an examination of the accounts themselves the receiver ought to have known they were untrue had he exercised reasonable care and diligence in the control and management of this business.

The referee expressly found that the receiver did exercise proper care and diligence in the employment of competent persons to assist him and upon whom he was reasonably entitled to rely. The District Court did not pass upon this question, but held that it was immaterial whether he had exercised due diligence in selecting subordinates for the reason that he did not file his reports as required by the order of the court, and that he ought to have known from these reports that the operation of this plant by a receiver was a losing venture, and that he should have communicated this knowledge to the court and asked for an order to discontinue further operations. In reference to the question of due diligence by the receiver in the selection of a manager and bookkeeper the court said::

"The receiver should not be held liable for failure to discover the true condition of the business at any time, if by reason of inaccurate information furnished him by his employés, due to faulty bookkeeping methods or incorrect inventories, if any, provided he had exercised due diligence in the employment of competent employés upon whom he was reasonably entitled to rely, and provided that he himself exercised due diligence in making all the material inquiries of them which were reasonably necessary to ascertain the real condition of the business."

This, we think, is a correct and clear declaration of the law upon that subject, and applying that law to the facts admitted or proven in this case, we are unable to find from the evidence that the receiver was guilty of any such negligence as would make him liable for the losses sustained by the operation of this plant during his receivership.

Both the receiver and Wert, the manager, employed by the receiver, testified that Evans did enquire of him in reference to the accuracy of these inventories and accounts. Evans also testified that he discussed each report with Mr. Wert, the manager, and Mr. Conroy, the bookkeeper, and frequently discussed with them the operation of the business and tried to remedy things that they felt were detrimental to the business including getting better prices for the material and saving operation expenses, etc.

A number of business men testified that notwithstanding their business experience they were unable to find any inconsistencies in the reports of the receiver that would challenge the attention of an ordinary business man who was not skilled in bookkeeping. The witness Houston, who in addition to his business experience in plants of similar character is also an expert bookkeeper, carefully compared the accounts for July and August. After making such examination and comparison, he testified:

"There is therefore nothing in the figures or the percentage which would be out of the ordinary from my own personal experience."

It is true that several witnesses have testified that the receiver should have discovered discrepancies and mistakes in these accounts which, in the light of subsequent developments, have now been subjected to a more critical examination and analysis than it appears from the evidence the average business man is in the habit of giving to reports submitted to him by his subordinates in whom he has confidence and who have been employed because of the presumption that they have expert knowledge in reference to the matters over which they are placed in control.

It is also true that a number of witnesses, principally expert accountants, have testified as to the manner in which they would have conducted this business and kept these accounts if either of them had been appointed receiver of this bankrupt estate. Even though it were admitted that the methods suggested by these gentlemen would have been far better than the methods employed by the receiver, nevertheless there is evidence in this record that in the management and control of this business the receiver did employ the same usual and customary care and business methods employed by many successful business men in that locality.

Some of these expert witnesses testified that the receiver should have used the gross profit test in determining the truth or falsity of these reports. On the other hand, other successful business men and expert accountants in that locality testified that they never heard of this test, but that as explained by the witness it would be wholly useless in any business with which they had ever been connected. One of these expert witnesses who testified in favor of the gross profit test also stated in that connection that before such a test can be applied the business must be operated for sufficient length of time to arrive at an accurate estimate of gross profits. The evidence in this case shows that during the years of operation by the bankrupt prior to the commencement of this proceeding, the gross profits covered a very wide range. From this evidence it would appear that the gross profits could not have been determined with even approximate accuracy in the short time the receiver operated this factory, and therefore such a test would have been impossible, even though the receiver had full knowledge of that method. If he had no such knowledge, then, of course, he could not be held liable for lack thereof, first, because it does not appear from all the evidence that the gross profit test was commonly known and applied by business men in that locality, second, because he was not selected as receiver upon the theory that he was an expert accountant, but rather upon the theory that he was honest, intelligent, and experienced to some degree in business affairs.

It is insisted, however, that the receiver was misled by these reports because of his own negligence in not having physical inventories made each month the plant was in operation. Several witnesses testified that good business methods would require him to have done this. Others, apparently as equally successful and credible, testified that they knew of no such practice in that locality. The witness Bowers,

who testified that this was done in his factory, also testifies that it had been done only for the preceding year and that even in that year no physical inventories were taken of the lumber and that the methods employed in his factory are methods developed by a long course of business experience that could not be applied to a business to be conducted for a few months.

However that may be, the evidence shows that of the five inventories taken by the receiver during the operation of this plant, three of them were physical inventories; the inventory of July 31st and of August 31st being estimated by adding to the original physical inventories of July 3d and 4th the amount of goods purchased, and deducting therefrom the amount of goods sold or used. In this connection, taking into consideration the evidence offered on behalf of the receiver as to the delay and expense incident to the taking of a physical inventory, it would seem that the course he pursued as to these two inventories was at least a reasonable one and a method adopted by many successful business men. At all events, it does not disclose such culpable negligence on his part as would make him responsible for the losses occurring during the time he operated this plant. It also further appears that physical inventories were taken October 1st and October 31st, and that these inventories failed to disclose to the receiver the discrepancies in the accounts submitted to him by the manager and the bookkeeper. This would indicate that the failure to take physical inventories on July 31st and August 31st was not the real cause of the trouble, but rather that the servants employed by the receiver upon whose honesty, ability, and integrity he had a right to rely, were either careless in the making of physical inventories and keeping the accounts or actually intended to deceive him, and in either event, if the receiver exercised due care and diligence in the selection of honest, capable, and efficient servants, he is not responsible for results if he did not know or ought not to have known of their carelessness or deceit.

In determining whether the receiver ought to have known from the reports themselves that they did not truthfully report the status of the business at the close of the periods they purported to cover, a court cannot apply the same standards of criticism of his conduct as it would apply to expert accountants, or even to men of long experience and familiarity with this particular class and character of business. True, it is shown by the evidence that this receiver has had a varied experience as vice president and director of a lumber company, president of a university, practicing physician, vice president and director of a bank, medical director of an insurance company, secretary and president of the chamber of commerce, connected with a normal school for two years, and captain in the medical corps of the United States Army. While all these different enterprises may have given him a broad business experience, it certainly did not tend to his development as an expert in either line and especially not as a bookkeeper or as a manager of a manufacturing plant of this character and proportion; yet with this experience and with the aid of a competent manager and an expert bookkeeper and able counsel, he ought to have succeeded fairly well. He was unfortunate, however, in the time in which he was

called upon to operate this plant, in that he was handicapped in several particulars, especially the stopping of practically all building operation by government war activities. He was unfortunate in the selection of his bookkeeper and manager, in that it would now appear that either through lack of ability or fraudulent purpose these employés failed in the proper discharge of their respective duties. He was unfortunate in the selection of counsel because the member of the firm employed, having this particular matter in charge, became so ill that he could give it no further attention, and the other member of the firm abandoned his practice and enlisted in the Army of the United States.

Taking all these facts into consideration in connection with the evidence of reputable and successful business men that it would have required an expert accountant to discover inaccuracies and mistakes in these reports, this court has reached the conclusion that his failure to do so was not such negligence on his part as would entitle the trustee or the creditors to recover from him personally the losses sustained in the operation of this plant during his receivership, and therefore the judgment of the District Court is reversed, and the cause remanded for further proceedings in accord with this opinion.