74 F.2d 269 (1934)
In re WHITE STAR REFINING CO.
STATE OF TEXAS et al.
v.
PORTER.
SAME
v.
PORTER et al.
Nos. 7246, 7370.
Circuit Court of Appeals, Fifth Circuit.
December 18, 1934.
Rehearing Denied January 11, 1935.
Willis E. Gresham and Everett L. Looney, both of Austin, Tex., for appellants.
*270 R. W. Haynie, of Abilene, Tex., and F. D. Wright, of Cisco, Tex., Ellis Douthit, of Sweetwater, Tex., and E. L. Harwell, of Abilene, Tex., for appellees Porter and others.
Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.
SIBLEY, Circuit Judge.
These appeals, successively taken in reference to the same bankruptcy, vividly illustrate the embarrassments which may result from a failure scrupulously to follow the rules of comity between state and federal courts. Not only have the ministerial officers of the courts come into collision and been each enjoined by the other's court, but a judge himself has been impleaded and enjoined from further action, along with the state of Texas and her Attorney General and inferior officers. The state court of Travis county, Tex., in a suit by the state of Texas filed to assert a claim for gasoline taxes and to foreclose a lien against the property of White Star Refining Company, had on August 8, 1933, appointed a receiver for the property and he had taken it in charge. On August 24, 1933, an involuntary petition in bankruptcy was filed against the White Star Refining Company, grounded on the state receivership and the company's admission of insolvency and willingness to be adjudged a bankrupt. Adjudication was had by the referee the same day and he appointed a receiver in bankruptcy who was directed to take charge of all the company's property in the hands of the state receiver and the latter was summarily ordered to surrender it. The state receiver complied without consulting with the state court. Thereafter the state receiver, joined by the state of Texas, petitioned the referee to set aside the adjudication and the appointment of a receiver and to return the property taken from the state receiver. The referee refused to do any of these things and was upheld on review by the district judge from whose decision appeal was taken. Pending this appeal, the referee sold the property in a lump free of liens for much less than the state of Texas claims, notwithstanding an order of injunction against the sale issued by the state court. He confirmed the sale and put the purchaser in possession, in the face of a telegraphic request from the State Attorney General for time to object to the confirmation, he claiming to have just heard of the sale. The state court then ordered the purchaser to deliver the property to the state receiver, and, on his refusal, issued process to the sheriff and constables of the county to seize it for such delivery. The judge of the bankruptcy court on a petition addressed to him by the trustee in bankruptcy and the purchaser thereupon by mandatory injunction required the state officers to restore it to the purchaser and temporarily enjoined them, the state of Texas and its Attorney General and the judge of the state court, from taking any further action about the property and from interfering in any manner with the administration of the trustee in bankruptcy. The enjoined defendants pleaded that the state of Texas had never consented to be sued thus; that the property in contention was first in the possession of the state court to answer the foreclosure of a lien not invalidated by bankruptcy; and that the bankruptcy court had no jurisdiction to take it away or sell it or enjoin the state court proceedings, and prayed that the injunction be vacated and the property restored to the state receiver. On a hearing, the temporary order was made permanent. From this judgment, the second appeal was taken.
The fundamental error of the court of bankruptcy, in the train of which others followed, was in misapprehending the scope of the bill in the state court, and holding it to be only a general insolvency proceeding which must yield to a bankruptcy filed within four months, the jurisdiction in bankruptcy being paramount. Neither the original bill on which the receiver was appointed nor the amended bill, which also was filed before the bankruptcy, expressly alleged insolvency of the company, though insolvency might be inferred from the allegations touching property and debts, and neither prayed for any general administration of assets to creditors or that they be made parties or be afforded any relief. The substance of the original bill is that the company owed taxes and penalties and interest on gasoline made and distributed by it for a period beginning January 1, 1933, to an amount alleged to be $3,569.94, but by amendment the time was enlarged to begin July 1, 1931, and the amount to $23,168.46; that it was constantly making sales, but by concealment and false records was not paying what was due so that an accounting was necessary; that the state had by virtue of cited statutes a first lien securing the amount due against all the property both real and personal of the company used by it while operating as such manufacturer and distributor of gasoline in the state, "consisting of leasehold rights, buildings, automobiles, trucks, refinery equipment, tanks, pump-houses, warehouses, light and plumbing fixtures, office *271 equipment and all other equipment used by said Company in connection with said business and located in Cisco, Eastland County, Texas"; foreclosure of the lien is sought, and because of the dishonest method of business and the likelihood of the dissipation of the property on which the state has a lien, a receiver is prayed to operate the business and prevent irreparable loss both to the state and others. The prayers are for a receiver to possess and preserve the assets of the company and to run the business, for injunction against interference with him, for judgment for the sum claimed, the declaration and foreclosure of the state's lien, and its satisfaction by sale of the property. The amended petition adds a prayer that the receiver already appointed make an accounting "for the inspection of all creditors." We do not think this can be considered a general insolvency proceeding. The state of Texas was seeking to enforce its lien against the plant of this refiner and distributor of gasoline for such taxes as were owing, and asking a receivership to protect its interests and at the same time by conducting the business to do as little harm as might be to the company and its creditors, its contention being that the plant would not after all sell for enough to pay the tax claim. It was a bill to foreclose a statutory lien against specific property though only generally described, with a receivership in aid of it. The order appointing the receiver was somewhat broader, for the receiver was directed to take charge of all property of the company, for the protection of the plaintiff and other creditors, to be preserved and administered in this suit, and very broad powers were given him in conducting the business and dealing with the company's affairs, and all creditors were enjoined from instituting action against the company as well as from interfering with its property. Such an injunction if it stood would result in forcing all creditors into this suit in order to get any relief and in thus using it as a general creditors' bill. Whether the judge in appointing a receiver can thus enlarge the jurisdiction invoked by the bill we do not decide, because if this feature is thus added, the case then becomes one in which a lien is sought to be foreclosed and additionally, but incidentally and not as the main object, general creditors are to be relieved. If such be the status of the case, in its aspect as a general creditors' proceeding it falls before a bankruptcy filed within four months and as to all assets not covered by the lien, but the bill stands good as one for foreclosure and holds the property subject to the lien. Carling v. Seymour Lumber Co. (C. C. A.) 113 F. 483. That the foreclosure of a lien not invalidated by bankruptcy on specific property undertaken in a state court with or without receivership is unaffected by the subsequent filing of a bankruptcy petition against the owner of the property, and that the bankruptcy court as to that property has not paramount jurisdiction but only concurrent jurisdiction and must observe due comity is now well settled. Peck v. Jenness, 7 How. 612, 12 L. Ed. 841; Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; Metcalf Bros. & Co. v. Barker, 187 U. S. 165, 23 S. Ct. 67, 47 L. Ed. 122; Pickens v. Roy, 187 U. S. 177, 23 S. Ct. 78, 47 L. Ed. 128; Straton v. New, 283 U. S. 318, 51 S. Ct. 465, 75 L. Ed. 1060; Davis v. R. R. Co., 7 Fed. Cas. No. 3,648; Blair v. Brailey (C. C. A.) 221 F. 1; Russell v. Edmondson (C. C. A.) 50 F.(2d) 175; Bryan v. Speakman (C. C. A.) 53 F.(2d) 463.
But it is urged that a tax with its lien is not within this rule, and that exclusive jurisdiction over the settlement of tax claims is vested in courts of bankruptcy by section 64a of the Bankruptcy Act, as amended 11 USCA § 104 (a). We do not doubt that the court of bankruptcy may inquire into the amount and legality of any tax which is to be paid by it and that such liens as are claimed to accompany the tax are included in the inquiry. Van Huffel v. Harkelrode, 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256, 78 A. L. R. 453; Truman, County Treas., v. Thalheimer (C. C. A.) 19 F.(2d) 468. But if at the occurrence of bankruptcy a state court is foreclosing a tax lien on property in its control, there is nothing in the act to withdraw jurisdiction from it any more than in the foreclosure of any other lien over which the bankruptcy court is given jurisdiction. We considered section 64, as amended (11 USCA § 104) in connection with certain Texas taxes and their liens in City of Dallas v. Ryan (C. C. A.) 62 F.(2d) 959, and held that it had reference to paying out the general estate of the bankrupt and that secured debts stood under other provisions, and that the taxes of the city of Dallas which by its charter had a lien from their accrual were to be treated as secured debts and we upheld the lien. The taxes here involved are given a lien by these statutory words: "All taxes, fines, penalties and interest due by any distributor to the State shall be a preferred lien * * * upon all of the property of any distributor, devoted to or used in his business as a distributor, which property shall include refinery, blending plants, storage tanks, warehouses, office buildings and equipment, tank trucks *272 or other motor vehicles or any other property devoted to such use, and each tract of land on which such refinery, blending plant, tanks or other property is located, or which is used in carrying on such business." Article 7065a  7, Vernon's Ann. Civ. St. The lien probably arises as the taxes accrue. See 61 C. J., Taxation, §§ 1172, 1173, and cases cited. It does not depend on insolvency or any court action. The tax is a claim secured by the described property. A state court which has taken jurisdiction of the property to enforce the lien is entitled to try all questions about it and may not be hindered by the District Court because of a subsequent bankruptcy. In Truman Case, supra, it was the tax officers, and not a court of concurrent jurisdiction, who were required to submit to the court of bankruptcy.
As we read the statute, the lien attaches to the plant and equipment of the company, but not to its materials for manufacture or its products or the proceeds of their sale, which are left free for commercial use. The former, the state court receiver was entitled to keep and is now entitled to have in his possession. All other assets he should have delivered to the bankruptcy court and should now deliver or account for. His surrender of the plant and equipment to the bankruptcy court without the order of his own court goes for nothing. He was appointed to hold it and had no authority to surrender it. In re Watts, 190 U. S. 1, 23 S. Ct. 718, 47 L. Ed. 933; Whitney v. Barrett (C. C. A.) 28 F. (2d) 760. It was so held of a bankruptcy receiver in Whitney v. Wenman, 198 U. S. 539, 25 S. Ct. 778, 49 L. Ed. 1157. We will add that it is not a due observance of comity for one court in the first instance to order the receiver of another court to turn over property. The possession is that of the court appointing the receiver, and the demanding court should instruct its officer to enter the possessing court and request it to direct its receiver to surrender the property. A refusal is to be reported to the demanding court which will determine whether to direct an appeal from the refusal or to enter upon coercive measures.
The referee and the district judge did not err in refusing to vacate the adjudication and the appointment of a receiver because of the prior existence of the state receivership. The exercise by the state court of its jurisdiction to foreclose the tax lien could not be stopped, but equally it would not prevent an adjudication in bankruptcy for lawful cause. Such cause existed because of the insolvency of the White Star Refining Company and its consent to be adjudicated. It also existed because of the state court receivership, for it on its face covered all the property of the company and is within the words of section 3 of the act as amended in 1926 (11 USCA § 21). Standard Accident Ins. Co. v. E. T. Sheftall & Co. (C. C. A.) 53 F.(2d) 40.
The judgment refusing to vacate the adjudication is affirmed, but the refusal to restore the property to the state court is reversed so far as applies to the plant and equipment of the company. The sale of the plant and equipment pending appeal is nullified by the reversal and must be set aside. The injunction granted against the state of Texas, and her officers, and against the judge of the state court and its officers is reversed and set aside. The bankruptcy case stands for further proceedings not inconsistent with this opinion.
Appeal No. 7246 reversed in part.
Appeal No. 7370 reversed.
FOSTER, Circuit Judge (dissenting).
Of course, in many cases where a state court has custody of the res in a suit to foreclose a definite lien prior to bankruptcy, the bankruptcy court ought not to interfere. In this case I agree with the conclusion of the District Court that the proceeding in the state court was on a general creditor's bill and the receiver was appointed to hold the property for all the creditors. The lien of the state of Texas was unliquidated, indefinite as to amount, and did not cover any specific property that could be identified when the suit was filed. The lien was inchoate before judgment. It is fundamental that when a sovereign state voluntarily goes into court she is to be treated the same as any other litigant. There is no doubt that the corporation was insolvent. The claim for taxes could be adjudicated and all the rights of the state preserved in the bankruptcy proceedings. The jurisdiction of the bankruptcy court was superior to that of the state court and it owed the state court no comity. The ends of justice and its orderly administration would be better served by affirming the action of the District Court.
For these reasons, I respectfully dissent.