**In re CURTIS et al.**
No. 242.

Circuit Court of Appeals, Second Circuit.
April 1, 1935.

David W. Kahn, of New York City, for appellant.

Shaine & Weinrib, of New York City (Edward C. Weinrib, of New York City, of counsel), for respondent W. D. Moore & Co. Liquidating Corporation.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

On September 20, 1928, an involuntary petition in bankruptcy was filed in the District Court for the Southern District of New York against Harry M. Curtis, Spencer Wyman Aldrich, Ernest V. Clark, and Norman W. Halliday individually and as partners in business under the firm name of W. D. Moore & Co. Adjudication and the appointment and qualification of the appellant as receiver followed in due course.

The bankrupts had been engaged in the stock brokerage business; many securities had to be sold; and many loans required adjustment. The receiver was authorized to do this and obtained an order for the employment of one Martin, a competent and experienced man, to assist him as an accountant. Martin employed an assistant named Brundage, but nothing as to his qualifications has been shown except that he had "a very considerable amount of experience in stock brokerage insolvencies." With the aid of these men, the appellant sold the securities through the Chemical National Bank in New York, where he carried his account as receiver. His efforts were sufficiently successful to make it possible for a composition offer to be made, accepted, and on March 1, 1929, confirmed. A cash dividend was paid and all remaining assets were turned over by the receiver for liquidation and distribution among the creditors to a corporation formed for that purpose and known as the W. D. Moore & Co. Liquidating Corporation. Certain litigation delayed the completion of the receiver's distribution under the composition decree, but by September 4, 1930 matters were so advanced that he obtained an order for his discharge as receiver and the cancellation of his bond.

He had at this time filed no formal account but had turned over his books and those of the bankrupts to the liquidating corporation, and apparently all concerned were then satisfied that he had fully and correctly accounted as receiver.

Early in 1933, however, it was discovered by accountants for the liquidating corporation that the Chemical National Bank had sold for the account of the receiver 650 shares of stock in excess of what he had and had covered the sale by the purchase of a like amount of stock in the open market at an advance of $13,700.10 over the price at which the stock had been sold, charging the difference to the receiver's account.

When the matter was called to the attention of the appellant he professed ignorance of the transaction, and there is no proof that he had previously had actual knowledge of it. Application was then made to the court for an order vacating the appellant's discharge as receiver and requiring him to file his account. The order was granted April 19, 1933. He then filed an account in which the shortage was disclosed.

His explanation of the matter is that on November 5, 1928, he obtained an order authorizing him to sell certain securities and at once directed Martin to sell them "cautioning him to use his best judgment in order that the highest possible prices should be obtained." Among these securities were 2,004 shares of St. Joseph Lead Company. Martin directed Brundage to place an order with the Chemical National Bank to sell 650 of those shares provided a minimum price named could be obtained. Martin was notified that the stock could not be sold at the price set and then instructed Brundage to cancel the selling order given the bank. Brundage, whose death has made his testimony unavailable, reported to Martin that he had canceled the order though the bank denies that. Later the price of the stock advanced to the minimum price before set for the 650 shares and the bank was directed to sell 2,004 shares. Its execution of both orders at that time was what made it necessary to buy in 650 shares on a rising

market to cover the sale and occasioned the loss. This explanation was held insufficient and the account of the appellant was surcharged with the shortage.

It should be noticed at the outset that although the appellant delegated to Martin authority to use his own judgment in selling the securities, there is no question raised as to the propriety of selling the stock at the price obtained. Whether strictly this was or was not an improper delegation of authority is purely academic on this appeal and will be passed without further comment. The appellant knew that Martin had employed Brundage as his assistant and so far as shown knew nothing of the qualifications of Brundage except what appears above. Of course he was bound to know that Brundage would assist Martin in his work. That was the sole purpose of his employment. While it is true that the order was for the employment of Martin only as an accountant—the question of his compensation aside for that is not involved—this did not curtail the right of the appellant to use his services otherwise in respect to any of the receivership business which he was competent to do and which the receiver was not bound to perform personally. Certainly there are often many things which a receiver cannot be expected to do himself. He may employ competent assistants to enable him to comply with the terms of his appointment. Evans v. Williams (C. C. A.) 276 F. 650. The magnitude and difficulty of the work to be done controls in that respect rather than any fixed rule of law. Kennebec Box Co. v. O. S. Richards Corporation (C. C. A.) 7 F.(2d) 290. Nor is a receiver, himself without fault, individually liable for the torts and misconduct of competent subordinates he requires, and employs in the exercise of adequate care and prudence, to assist him. See Farmers' Loan & Trust Co. v. Central Railroad of Iowa (C. C.) 7 F. 537. But this does not mean that a receiver is to be relieved of the duty to account for funds of the estate which come to his hands. That duty is personal and for its performance the receiver is responsible. In re B. A. Montgomery & Son (D. C.) 17 F.(2d) 404. It requires the receiver to justify his conduct or make good any shortage. The shortage here was due to the negligence either of Brundage or of the bank in failing to cancel the first selling order before the second was executed. But the appellant has failed to show that the bank was at fault. The only alternative is that Brundage was negligent. Though we have no hesitancy in saying that a receiver may perform through a competent employee such an act as the giving or the cancellation of an order to sell stock, he does so at his own risk if he cannot show that he had good reason as a prudent man to believe that his employee was competent. Any requirement short of this would, to say the least, put a premium upon inattention by a receiver to the duties of his trust and subject the estate for which he acts as an officer of the court to hazards of the grossest sort. The instance in hand is a good example of what might be expected from the application of such a rule. The appellant, bound to account for the funds he received, has attempted to excuse his failure to do so to the extent of the shortage by saying that he knew nothing about it and can find out nothing but that his employee, selected not by himself but by another employee and about whom he has failed to show that he knew anything upon which fairly to base any conclusion that he was competent, was probably at fault. That this receiver was unaware of the over-sale when he applied for his discharge itself shows how little attention he gave to this phase of his duties. There is no intimation that the transaction was concealed from him. He knew he was selling stock not buying it. When the charge for the purchase of the shares appeared in his account with the bank his failure to discover it and determine while Brundage was alive whether the fault was that of his own employee or that of the bank is hardly compatible with the care a receiver should exercise in supervising the business of the receivership and, while not the basis of the surcharge, serves to make it easier to understand his apparent indifference to the qualifications of the employee he permitted to transact with the bank the business of selling the stock. As he has failed to show due care in selecting his employee, he has failed to show a valid excuse for charging to the receivership estate the loss which on this record must be attributed to his negligence.

Order affirmed.