### In re STANDARD BATHS.*

### VIRDONE v. DOWS ESTATES, Inc., et al.

### No. 476.

Circuit Court of Appeals, Second Circuit.
July 30, 1936.

*Writ of certiorari denied 57 S. Ct. 231, 81 L. Ed. ——.

Morris & McVeigh and Jerome S. Rosedale, all of New York City (Samuel C. Duberstein and Max Schwartz, both of Brooklyn, N. Y., on the brief), for appellants.

Leo J. Linder, of New York City (Leo Magill Goodman, of New York City, on the brief), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order directing Dows Estates Inc., Mabel Schwab, its dummy, and Farrington, a state receiver in foreclosure, to surrender possession of real property and chattels thereon to Virdone, a receiver in bankruptcy, appointed on involuntary petition before adjudication. The facts were as follows: The Nielk Holding Company owned a large building in Coney Island, fitted and used as a Turkish bath; this property it mortgaged to the Title Guarantee & Trust Company for $80,000, and the title company at once assigned the mortgage to Dows Estates Inc. The mortgage contained a clause, entitling the mortgagee to a receiver, which by virtue of section 254, subd. 10, of the Real Property Law of New York (Consol. Laws, c. 50) was equivalent after default to an assignment of rents and profits, and which gave the mortgagee an unconditional right to a receiver in that event. Some time thereafter Nielk Holding Co. leased the building to Nathan Klumock, who assigned the lease to the alleged bankrupt, Standard Baths, which went into occupation and so continued until the events hereinafter described. The mortgagor fell into default as to some $22,000 of taxes, besides the water charges, and Dows Estates Inc. filed a bill of foreclosure in the state court on June 26, 1935, making defendants only the mortgagor and the State of New York, (which was joined because of its lien for franchise taxes). Upon this bill it secured the appointment of Farrington, as receiver, who qualified, and had several interviews with Klumock, the president of Standard Baths, and with one Richman, another officer. He demanded that they pay him the rent, and they replied that it had been paid up to August first, and that they were "through with the Baths" anyway, because they could not operate them at a profit; there was too much competition. They had discontinued the use of the premises, and there was no one in the building but a chiropodist who occupied a very small cranny. As neither the fixtures, furniture, nor books had been taken away, Farrington put a custodian in charge, apparently to protect the property, and did nothing further until Standard Baths defaulted in payment of the quarter's rent, payable in advance on August first. Then he began a summary ejectment against it as lessee in the municipal court, but never served it or attempted to serve it personally; instead, the marshal merely nailed the process on the door, and mailed a copy to it as defendant addressed to the empty building. No effort was made to learn the whereabouts of Klumock, the president, though he had talked to Farrington eight or nine times in July, and although Liebman, its attorney, had written him two letters on which Liebman's address appeared. On the return day the judge issued a warrant of ejectment under which Farrington took possession on August fourteenth. On September fourth, the mortgagor, Nielk Holding Company, executed a deed to Mabel Schwab, the dummy of Dows Estates Inc., and Dows Estates Inc. began to make repairs with a view to reopening the building. Farrington apparently assumed to surrender possession

to Dows Estates Inc. immediately after the delivery of this deed; at least, we shall assume as much for the purposes of this case, although the evidence is not wholly satisfactory.

On October eleventh a single judgment creditor, the Consumers Petroleum Company, filed an involuntary petition in bankruptcy against Standard Baths, and on November eleventh procured a rule, directing Dows Estates Inc., Mabel Schwab and Farrington, to show cause why a receiver in bankruptcy should not be appointed, to whom they should surrender possession of the building and its contents. Upon the return day the judge appointed Virdone receiver, and referred the other issues to a master, who heard the parties at length and reported that Standard Baths had never abandoned the premises; that Farrington had not accepted the surrender, if there had been one; and that he had not used due diligence to make personal service in the summary ejectment. He declared that the warrant of ejectment was therefore void and that Standard Baths was entitled to possession. The judge confirmed this report and directed the respondents to surrender possession. From this order they appealed.

■ The respondents' first objection should alone have been enough for a dismissal of the proceeding; a district court, though vested with formal jurisdiction to make the order, should not disturb the custody of a state court. The lessee, Standard Baths, was not, it is true, a party to the suit in foreclosure, and the order appointing Farrington did not direct him to take possession of the premises and could not rightfully have done so, even if it had been. Holmes v. Gravenhorst, 263 N.Y. 148, 188 N.E. 285, 91 A.L.R. 1230. But the default in rent on August first made the receiver an assignee of the lessor's rents, and the order appointing him authorized him to prosecute suits for summary ejectment. The exact words were as follows: "Said Receiver * * * is authorized * * * to institute * * * all legal proceedings * * * to recover possession of * * * said premises, or to * * * prosecute any necessary action to recover rent * * * and to * * * prosecute summary proceedings for the removal of any tenant." When therefore Farrington sued Standard Baths to eject it because of the August default, he was acting strictly in accordance with the instructions of the court that had appointed him. His acts were its acts, and although until sale in foreclosure Standard Bath's right to possession as mortgagor would not have ended, even though a party (Barson v. Mulligan, 191 N.Y. 306, 84 N.E. 75, 16 L.R.A.(N.S.) 151; Herrmann v. Cabinet Land Co., 217 N.Y. 526, 112 N.E. 476; Metropolitan Life Ins. Co. v. Childs Co., 230 N.Y. 285, 289, 130 N.E. 295, 14 A.L.R. 658; Prudence Co. v. 160 West Seventy-Third St. Corporation, 260 N.Y. 205, 211, 183 N.E. 365, 86 A.L.R. 361; Holmes v. Gravenhorst, supra), the court assumed to put him in the position of lessor in the mortgagor's right. We have no occasion to consider whether the order was right in so doing, or whether it gave him any standing in the municipal court to sue in summary ejectment, or whether the warrant under which he took possession was void because issued without personal service, or whether it was subject to collateral attack. All that matters is that the possession he took, he took under the order; and that his possession was the court's possession; his title, his right to that possession, were for the court which appointed him and no other court could assume to decide them. This doctrine goes so far that even though he had taken possession of the wrong property, it was the possession of the court. That was not originally true (Slocum v. Mayberry, 2 Wheat. 1, 4 L.Ed. 169; Cropper v. Coburn, Fed.Cas.No.3,416, 2 Curt. 465; 5 Kent's Commentaries 410); but, beginning with Freeman v. Howe, 24 How. 450, 16 L.Ed. 749, it has by now become established beyond debate. Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145; Lammon v. Feusier, 111 U.S. 17, 4 S.Ct. 286, 28 L.Ed. 337; Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; Lehman v. Spurway, 58 F.(2d) 227 (C.C.A.5).

■ The petitioner replies that even though the state court got possession of the property on August fourteenth, it lost it when Farrington assumed to surrender the property to Dows Estates Inc. after Nielk Holding Company had conveyed it to Mabel Schwab on September fourth. In addition, that the foreclosure suit had in substance ended; that the state court had nothing more to do, and that its continuation was a mere sham. As to the first point, Farrington had no power to surrender the court's possession; he was merely its arm and must have its leave before he gave up anything which he had taken with

its authority. Whitney v. Wenman, 198 U.S. 539, 553, 25 S.Ct. 778, 49 L.Ed. 1157; Isaacs v. Hobbs T. & T. Co., 282 U.S. 734, 739, 51 S.Ct. 270, 75 L.Ed. 645; Whitney v. Barrett, 28 F.(2d) 760 (C.C.A.5); In re White Star Refining Co., 74 F.(2d) 269 (C.C.A.5). As to the second point, the suit had not ended and the parties knew that it had not. On October 12, 1935, they signed a stipulation which was annexed to a petition of Farrington to the supreme court, verified on October fourteenth. The stipulation agreed that he should have $750 out of $1,757 collected; that he and his surety should be discharged, and that an order to that effect might be entered without further notice. The petition and stipulation and a blank order were submitted to the clerk of the supreme court, who endorsed upon it that the papers did not show that the plaintiff was entitled to the balance anyway, and that the allowance recommended was improper under section 1547 of the Civil Practice Act. He appears to have refused to submit the papers to the judge, and nothing more was ever done. The clerk was apparently right, the commissions were too large and there was no proof of the title of Dows Estates Inc. to the collections. At any rate, patently the suit had not ended and the court had not surrendered the res. Thomas v. Brigstocke, 4 Russell 65. The bankruptcy court was bound to await that surrender, or to submit to the state court all questions, especially as to the person who should receive possession. On occasion a federal court is indeed forced to demand possession from a state court of property in its custody; it is a delicate jurisdiction only too likely to result in unhappy controversies; because of that possibility it is of especial importance that the power should be limited strictly to the occasions when it cannot be avoided, and that in all instances we should be extremely solicitous to avoid any unnecessary conflict. There was not the slightest reason here for such a proceeding as this. It was originally beyond the jurisdiction of the summary bankruptcy court anyway, though Dows Estates Inc. apparently agreed to it; it was improper to implead the state court for the reasons we have given; it was irregular to implead Dows Estates Inc. in so far as the motion was to appoint a receiver; it was quite unnecessary before a trustee was appointed to take away a possession that was not shown to have been of any value; Dows Estates Inc. was not shown to be irresponsible, if it had any value. Besides, the decision was wholly inequitable, if the bankruptcy court had been free to act at all. Upon mere suggestion of the situation it should have directed Standard Baths to submit to an immediate judgment of foreclosure and sale in the foreclosure suit unless it was prepared to redeem as mortgagor. Bankruptcy courts are not to hold off lienors from foreclosing their valid liens; the fact that pending the formalities of foreclosure, Standard Baths might have been entitled to possession did not justify protracting those formalities, rather it required the court to dispense with them at once. Again Standard Baths was also in default as lessee, and the bankruptcy court, if it had been free to act at all, ought not to have profited by any irregularity in the summary ejectment; it should have allowed Dows Estates Inc. to re-enter instanter without any ejectment whatever, unless the rent was paid. The proceeding will be dismissed with costs and without prejudice; the district court is directed, if the respondents desire, to consider whether the petitioning creditor has not made itself liable personally for the costs, disbursements, special master's fees and counsel fees.

Order reversed with costs; proceeding dismissed without prejudice.