In re C. M. PIECE DYEING CO., Inc.
GEORGE et al. v. LEE et al.

BUSHWICK BLDG. CO., Inc., v. SAME.
No. 327.

Circuit Court of Appeals, Second Circuit.
April 5, 1937.

38

Edward Siegel, of New York City, for Emanuel George et al. and the Bushwick Building Co., Inc.

Maurice F. Miller, of Brooklyn, N. Y., for Robert C. Lee, as receiver.

Horace G. Pender, of Brooklyn, N. Y. (Julius Zizmor, of Brooklyn, N. Y., of counsel) for trustee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

These appeals are from an order in bankruptcy which directed the trustee. in bankruptcy to pay claims for use and occupation of two lessors whose premises had been occupied by the receiver between December 15, 1935, the date of his appointment, and March 6, 1936, when the lessors took possession. The premises were in two parcels, one owned by Emanuel George and others; the other, by the bankrupt, upon which the Bushwick Building Company held a second mortgage. The bankrupt's business does not appear in the record, but upon the premises were a number of pieces of heavy machinery, difficult and expensive to move, to which a number of persons laid claim. The nature of these claims does not appear except that apparently in most cases—perhaps all— they were for sums of money due under chattel mortgages, conditional sales, or the like. The petition—involuntary—was filed on December 15, and the receiver was at once appointed and took possession on the next day. George filed his petition on December 21, asking payment for use and occupation out of the estate, against the receiver as such. The motion was made returnable on January 3, 1936, but was adjourned to the tenth, and the receiver who, so far as appears, had done nothing meanwhile, procured the appointment of an attorney on the eighth. The attorney got an order to sell the property on the ninth, but because, as he says, the bankrupt did not file its schedules until January 23d, he did nothing to bring on the sale except to send out notices to creditors for February 11. Meanwhile against the protests of George he succeeded in getting the motion repeatedly adjourned, and claimants kept appearing and demanding the machinery. No sale was had on February 11, and the matter drifted along until March 6, when the trustee took possession. He at once surrendered the premises to the lessors, and has realized out of the machinery only $700.

The Bushwick Company had made some futile demands upon the receiver for payment for the use of the premises covered by its mortgage, but did not move to have the receivership extended to its parcel at any time before February 4, when a referee in the foreclosure suit in the state court executed a deed to it. On the fourteenth it made a motion like George's, which on some day in May—undetermined—was referred to the referee in bankruptcy. (There is no similar order referring George's petition, but all parties assumed that the Bushwick order covered it and so did the referee.) He heard the parties at length and concluded that the receiver was at fault for not selling the machinery, or moving it to a storage warehouse, within one month after his appointment. He found the value of the use and

occupation of each parcel; George's at $400 a month, and the Bushwick Company's at $500; and charged the trustee with one month's rent upon both, $900, and the receiver personally with one month and twenty days, $1,499.99. All parties petitioned to review this order, and the district judge modified it by throwing the whole payment upon the trustee, and exonerating the receiver. His notion was that though the receiver might have exercised bad judgment, yet, since all his conduct was in good faith, he should not be held. The order made the trustee's obligation conditional upon his having enough money left "after the payment of the proper administration expenses." The trustee has appealed from this order with the leave of this court; he argues that the receiver wholly neglected his duties, and should be charged with all the expense. George and the Bushwick Company have also appealed, but without leave of this court; they argue that their claims should have priority over administration expenses, and that the receiver should be personally charged with the full amount.

[1-3] So far as the petitions of George and the Bushwick Company sought to charge the estate they were "proceedings" under section 24b, Bankr. Act, as amended, 11 U.S.C.A. § 47 (b), and their appeals must be dismissed. Gates City Clay Co. v. Dickey, 39 F.(2d) 581 (C.C.A. 8). Therefore we cannot consider the priority of the "administration expenses" granted by the order. As to the effort to charge the receiver personally, it was the trustee who first introduced that dispute into the case; it was a "controversy" under section 24a, as amended (11 U.S.C.A. § 47 (a). It is true that the decisions are not harmonious, when the question is whether the estate may surcharge a trustee or receiver for the negligent management of his trust. That was said to be a "proceeding" in Re Moore & Bridgeman, 166 F. 689 (C.C.A. 5), and a "controversy" in Evans v. Williams, 276 F. 650 (C.C.A. 6), and Carson Pirie, Scott & Co. v. Turner, 61 F.(2d) 693—a later decision of the same court—is in accord with In re Moore & Bridgeman. In that situation the question is whether the receiver has mismanaged the property entrusted to him; that may well be a "proceeding," but it is not the case at bar. The receiver made an implied contract with the lessors on which they may sue him; he can indeed indemnify himself out of the

estate if he has acted within his authority, but so far as he has not, his position is like that of any other obligor. The only question that can arise is, not whether such a dispute is a "controversy" as distinct from a "proceeding," but whether the bankruptcy court had any jurisdiction over it at all. But as the receiver remains an officer of that court even when he abuses his authority, its jurisdiction extends to all his dealings undertaken under color of its authority. In re Standard Baths, 85 F.(2d) 110, 112 (C.C.A. 2). Hence we hold that the suit introduced by the trustee's intervention was a "controversy," and that the appeals were pro tanto as of right.

Coming then to the merits, we must first throw out that part of the claim of the Bushwick Company which arose before February 4, 1936, when it got title under the deed in foreclosure. It was only a mortgagee, and although the mortgage contained a clause which authorized it to go into possession upon any default, in New York that gives no right to the usufruct of the property until the mortgagee gets a receiver, or enters. Sullivan v. Rosson, 223 N.Y. 217, 119 N.E. 405, 4 A.L.R. 1400. By this doctrine we are bound. Prudential Ins. Co. v. Liberdar Holding Corp. (C.C.A.) 74 F.(2d) 50. The Bushwick Company might no doubt have applied to the bankruptcy court at any time for a sequestration, or an order requiring the receiver either to pay for use and occupation, or to surrender possession. It did neither, and the bankrupt continued to enjoy possession as before petition filed. The claim must therefore be reduced to thirty days—February 4 to March 6—which at the rate fixed is just $500.

We think that the referee was right in charging, and the judge wrong in excusing, the receiver, who was extraordinarily slack in his duties. His excuses are that claimants to the property appeared in such numbers that he could not act, and that the bankrupt did not file its schedules until January 23. Neither excuse is good. Most, if not all, of the claims were solvable in money; and the court had power to sell free and clear of them and to charge the proceeds. Van Huffel v. Harkelrode, 284 U.S. 225, 52 S.Ct. 115, 76 L. Ed. 256, 78 A.L.R. 453. If any machinery was claimed in kind, the receiver has not disclosed it, or why he could not have set it aside and sold the rest. Second, it was neither necessary nor proper for him

to wait for the bankrupt to file the schedules; General Order 18 (3) gave the court power to sell without notice; and the eighth bankruptcy rule of the Eastern District of New York only requires a receiver to give notice to "known creditors." Meanwhile the rents were running up at the rate of thirty dollars a day, a certain loss to the estate. Every consideration of despatch and economy demanded that he either abandon the premises and the machinery, or sell it, or remove it. As for the last he himself says that it would have been costly, and the fact that he started to sell, proves that the right course was to sell. If he had had any doubts, he should have applied to the court. The referee has allowed him a month, which seems to us quite enough, perhaps too much. Nor did the judge seek to defend his conduct; he excused him only because he had acted in good faith, relying upon Evans v. Williams, supra, 276 F. 650. It is, however, an error to suppose that good faith will always excuse derelict and negligent administration of an estate. In re Curtis, 76 F.(2d) 751 (C.C.A. 2); Covington v. Hawes-La-Anna Co., 245 Pa. 73, 91 A. 514, Ann.Cas. 1915D, 1254; In re Angell, 131 Mich. 345, 91 N.W. 611; Campbell v. Hargraves, 181 Ark. 492, 26 S.W.(2d) 876; Gutterson & Gould v. Lebanon I. & S. Co. (C.C.) 151 F. 72. More is required than honesty; a receiver is a fiduciary, he undertakes to care for the property and manage it for the creditors, to act with assiduity and with reasonable competence. Restatement of Trusts, § 174. If he is inert, if his conduct does not match even with the least exacting standards of competence, he will be charged. In Evans v. Williams, supra, it is true that the court put stress upon the receiver's good faith, but it was also at pains to justify his conduct as an administrator; it excused him only after deciding that he had been misled by assistants whom he had chosen with care enough. We are unwilling to set a standard which shall exonerate honest administration, however sluggish, however indifferent, however inconsiderate. Creditors are entitled to something more, and gentlemen who accept such positions must understand that they are to be alert and active in the business, though it proves exacting. If they are not willing to give their time to it, they had best not accept, for if they fail, they will be held accountable.

Of George's claim $400 will be paid by the estate "after the payment of the proper administration expenses," and $666.66 by the receiver personally. The claim of the Bushwick Company will be reduced to $500, which the receiver will pay personally; and he will bear the cost of the appeals. Order reversed and cause remanded for further proceedings in accordance with the foregoing.